## J. J. McDonough v. Jolly Bros., Appellants.

*Contract—Paving contract—Words of art—Evidence.*

Where a written contract, for paving with vitrified brick, required the contractor " to prepare all necessary beds of gravel, sand or other material that may be required for said paving," the contractor may show by parol evidence that the words " beds of gravel, sand or other material," had a definite and well known meaning in the trade, and related to the thin bed of light material placed at the top to receive the bricks, and did not embrace the putting in or tamping of the coarse material at the bottom.

Argued Nov. 1, 1894.    Appeal, No. 216, Oct. T., 1894, by defendants, from judgment of C. P. No. 3, Allegheny Co., Aug. T., 1893, No. 15, on verdict for plaintiff.    Before GREEN, WILLIAMS, MITCHELL, DEAN and FELL, JJ.    Affirmed.

Assumpsit on paving contract.    Before PORTER, J.

At the trial it appeared that on Sept. 10, 1892, defendants, who had a contract for rebuilding the track of a street railway in Wheeling, made a subcontract with plaintiff to do a portion of the work, including the paving.

The material clauses of the contract were as follows :

" That the said party of the second part agrees to commence work at once, and at his own cost and expense of every kind that may be required to relay and repave such portions of the tracks that may be required of him by the party of the first part (defendant).

" Said party of the second part agrees to do all filling between said tracks, and at the outside of said rails, so far as old pavement has been taken up, at his own cost and expense, or in other words, the said party of the second part agrees to prepare all necessary beds of gravel, sand or any other material that may be required for said paving, and to do said paving to the full satisfaction and acceptance of the city authorities, the Central Construction Co., and said party of the first part.    Said party of the first part and the Central Construction Co. are to furnish to the party of the second part all necessary material for doing said work, but the party of the second part is to provide and do all labor in any manner or shape in relaying said paving.

" The party of the first part, in furnishing material for said party of the second part, will furnish such material as close to the track as said first party can conveniently do so, and the said party of the second part is to accept said material there and put it in place from where it is left by the party of the first part."

After the work of paving was done the pavement became uneven. Defendants claimed that the pavement sank because of the improper work of plaintiff in not properly ramming down the foundation. Plaintiff claimed that he was not required to touch the foundation, but only to prepare the light material at the top to receive the bricks.

When plaintiff was on the stand the following offer was made : Mr. McGirr : I propose to show by the witness on the stand that the term, " preparing the bed," as used in the contract in this case in connection with the paving, is a technical term used in the business of street pavers in preparing the sand bed under the bricks on top of a foundation that has already been prepared. Objected to. Mr. McGirr : I will modify the offer to make it read this way: That it consists in preparing the sand, gravel and other necessary bed in which the bricks are laid upon the foundation which has already been prepared for the paver. Objected to as incompetent, immaterial and irrelevant, and further for the reason that the contract does not require any expert evidence in relation to this point. Objection overruled. Exception. Q. State definitely what the term, prepare the bed, in this contract means ? Objected to for the same reasons. Q. Do the words prepare the bed, have any particular significance in the paving business? A. Yes, sir. Q. What does the term mean ? Defendants' counsel requests plaintiff's counsel to state his purpose. The Court: We think that is within the offer. Mr. Rogers : We object to it as incompetent. Objection overruled. Exception for defendant and bill sealed. [1]

The witness answered : " A. That is what every paver has to do. Q What is it? A. When you get on a street, or on a street car track, the sand or gravel, or whatever it may be, is put there for to do that work with, and then, you know, you just level your bed off, just give the crown of the street—the grade of the street, whatever grade the city engineer or the

city inspector may require of you. He will give you your instructions before you start, and then you know in parts there is too much gravel or sand, and at parts there may not be so much; and then you are supposed to level that off and make a regular grade and carry that right through until you finish your work; that is the preparing of the bed. Every paver has to prepare his own bed as far as giving the grade of the street, or the contract, or whatever it may be."

When Harry Gibson, a witness for plaintiff, was on the stand, he was asked: Q. What has to be done before the paving is done? I mean in preparing a street where a street is to be repaved? Objected to as immaterial. Mr. McGirr: We simply propose to show by the witness that a street paver never has anything to do with preparing the foundation; that that is always done for him before he begins. Objected to as immaterial under the contract sued on. The Court: We will permit you to show that it was a term having a peculiar significance in connection with that business. Exception for defendant, and bill sealed. [2]

Mr. McGirr: " Q. Has 'preparing a bed,' in the street paving business, with sand or gravel, or whatever may be used for laying the pavement, any particular signification in the paving business? A. It has. Q. What is it? A. Why, the contractor has to put in the foundation, and we prepare the cushion of sand or gravel or whatever it is that the brick pavement rests on, an inch or so."

The court charged in part as follows :

" [But the plaintiff has undertaken to show you that the term, ' prepare all necessary beds of gravel, sand or other material that may be required for said paving,' is one well recognized and understood in that business, and that what is known as the bed of the pavement is that immediate stratum in which it is imbedded and which is intended to accommodate the brick pavement above to the irregularities of the foundation beneath. He has undertaken to show you (and we presume, gentlemen, that every word in a contract is put there for some purpose,) that that is a term well understood in the business, and in order to entitle him to the benefit of this construction of that term he must show you, gentlemen, that it was a custom to so designate this stratum in the trade, and he must show you that it

was a custom so general and universal that the parties must have been taken to understand it and to have dealt in view of it with each other.

" If he has satisfied you that this term was one so universally understood that the parties must have dealt in view of it, then, if he acted upon that, and the parties acted upon that, the plaintiff would only be liable for the defects in the bed and in the brick pavement itself, and not in that portion of it known as the foundation beneath.   However, gentlemen, this evidence as to custom must be such as to satisfy you, not that it is a custom sometimes recognized, but that it is a custom general in the trade.] " [3]

Verdict and judgment for plaintiff.   Defendants appealed.

*Errors assigned* were (1, 2) rulings ; (3) above instructions; quoting bills of exception and instructions..

*Wm. B. Rodgers*, for appellants.—The written contract being plain and unambiguous on its face, it was improper to admit parol evidence of the alleged custom: Wetherill v. Neilson, 20 Pa. 448; Collender v. Dinsmore, 55 N. Y. 200; Oelricks v. Ford, 23 How. 49.

The custom which plaintiff undertook to prove was not only inconsistent with, but was in direct contradiction of the express terms of the written contract and therefore inadmissible : Schooner Reeside, 2 Sumn. 567 ; Ins. Co. v. Wright, 68 U. S 456.

The alleged custom being a local or particular one, it should have been specially pleaded; and this not being done, and there being no notice whatever in the pleadings of any such custom, the evidence should have been rejected: Gould's Pleading, 4th ed., 46.

The evidence of a custom was insufficient to go to the jury because it did not show the alleged custom to be ancient, certain, uniform and notorious : Adams v. Ins. Co., 76 Pa. 411; Coxe v. Heisley, 19 Pa. 243 ; Chess v. Corcoran, 131 Pa. 356.

The' evidence was also insufficient to go to the jury because the alleged custom, being a special one, of a particular trade, it was necessary, in order to bind defendants, to show that they had knowledge of it, and this was not done : Scott v. Irving,

1 B. & Ad. 612; Sweeting v. Pearce, 30 L. J., P. C. 726; Bartlett v. Pentland, 10 B. & C. 760; Clayton v. Gregson, 5 A. & E. 302; Stevens v. Reeves, 9 Pick. 197; Bradley v. Wheeler, 44 N. Y. 495; Sipperly v. Stewart, 50 Barb. 86; Ry. v. Morgan, 52 Barb. 217.

*F. C. McGirr*, *John Marron* with him, for appellee.—In regard to words which are purely technical, or local, that is, words which are not of universal use, but are familiarly known and employed, either in a particular science or trade, or in a particular district, parol evidence is always admissible to define and explain their meaning among those who use them, and the principle and practice are the same in regard to words which have two meanings, the one common and universal; and the other technical, peculiar or local: 1 Greenl. Ev. § 295; 17 A. & E. Ency. L. 450; Quigley v. DeHaas, 98 Pa. 293; Gould v. Lee, 55 Pa. 99; Church v. Clime, 116 Pa. 146.

OPINION BY MR. JUSTICE WILLIAMS, Jan. 7, 1895:

This case depends on the construction of the written agreement entered into by the parties to this action on the tenth day of September, 1892. Prior to that date the appellants had contracted to take up and rebuild a street railroad in the city of Wheeling, and replace the paving disturbed thereby. So much of this work as related to the replacing of the pavement was sublet to the plaintiff by the written agreement referred to. Among other things this agreement provided that the Jolly Brothers were to furnish all the materials needed in replacing the pavement, and to deposit it as near to the track of the street railway as could be conveniently done. McDonough was to take the material so furnished and put down the pavement. The contract required him " to prepare all necessary beds of gravel, sand or other material that may be required for said paving, and to do said paving." The materials were furnished and deposited along the line by the appellants, and taken by McDonough and used in putting down the pavement. But the vitrified brick soon began to settle in different places and the pavement became uneven to such an extent as to attract the attention of the street railway company and of the city. The appellants sought to charge McDonough with responsibility for

the uneven surface of the pavement alleging that it was due to insufficient tamping of the bed upon which the bricks were laid. The plaintiff then brought suit to recover the contract price of this work alleging that the condition of the pavement was due to a defective foundation with which he had nothing to do, but which had been laid by the appellants before his work could be entered upon. His position was that the broken stone at the bottom had been insufficiently tamped and for this reason had settled unevenly, carrying the pavement with it and causing the unevenness of surface complained of. This work he contended was not covered by his contract or done or attempted by him, but was done by the appellants. They did not deny that the broken stone were put in by them but alleged that under the stipulation in the contract requiring the plaintiff to prepare the " beds of gravel, sand or other material " it was his duty to tamp the rough material placed in the bottom of the excavation as a foundation to support the pavement. In order to aid the court and jury in determining which of these conflicting interpretations of the contract was correct the plaintiff offered to show that the words " beds of gravel, sand or other material that may be required for said paving," had a definite and well known meaning among persons engaged in the work of paving; and that they did not embrace the putting in or tamping of the coarse material at the bottom, but related to the thin bed of light material placed at the top to receive the blocks or brick of which the pavement was made.

-The admission of this offer is the error complained of on this appeal. The words were susceptible of either interpretation. They were words of art. The offer to relieve against the ambiguity growing out of the manner in which they were used in this contract, by showing what they meant in the trade in which they were employed and to which they were peculiar, could not have been rejected without error. It was not an offer to prove a custom but to prove the trade meaning of a trade phrase. Words are to be met with in many trades that would trouble one not familiar with the business to which they are peculiar. The phrase " open hearth steel " would carry no idea to one unfamiliar with the manufacture of steel. So the expression " shoot a well " or " agitate a well," so common in the oil regions, would carry no definite idea to the mind of one who

was ignorant of the practical operations incident to the production of oil. When such words or phrases are made use of in a contract, it is often necessary to inform the court and jury of their meaning in the trade or employment to which the contract relates, or of the subject to which they apply, by oral testimony. Place v. Proctor, 2 Penny. 265; M. E. Church v. Clime, 116 Pa. 146; Bank v. Fiske et al., 133 Pa. 241.

The evidence was rightly admitted in this case and the judgment is affirmed.