# N. P. Nye *v.* The Pittsburg Company, Appellant.

*Contract—Written agreement—Parol evidence.*

Plaintiff sued for wages as a locomotive engineer, alleging employment by a parol agreement by the manager of the defendant, that at the time of employment it was agreed he should buy a lot of land from the defendant and be assisted by it towards the construction of a house for which he was to pay at stipulated rates of installments, and that his employment was to continue until the house was paid for. After repeated parol negotiations defendant's manager addressed a letter to plaintiff stating therein, " pursuant to our conversation about the matter of employment with us would say that our people have considered the matter and think favorably of it, with this exception that if you receive the full price of $85.00, and a boy is sufficient to do the work of a fireman, they would pay suitable wages for a boy," making an offer of $85.00 per month for plaintiff but not therein alluding to the purchase of lots or the term of employment. It was disputed whether the terms of this letter were expressly accepted. *Held,* that the letter did not constitute the entire contract between the parties and that it was not error for the court to submit to the jury whether the contract of employment was made prior to the receipt of the letter by parol agreement.

It is not the case of a written instrument varied in its effect by parol testimony nor of parol evidence to establish a contemporaneous oral agreement which induced the execution of a written contract.

Argued May 21, 1896. Appeal, No. 40, April T., 1896, by defendant, from judgment of C. P. Lawrence Co., Dec. T.,

1892, No. 65, for plaintiff. Before RICE, P. J., WILLARD, WICKHAM, BEAVER, REEDER and ORLADY, JJ. Affirmed.

Assumpsit on oral contract of employment. Verdict for plaintiff for $950.

The court below, MILLER, P. J., specially presiding, charged the jury:

The plaintiff, N. P. Nye, was and had been for some years prior to September 23, 1890, a locomotive engineer. At and prior to that date he lived at Dennison, Ohio, and had charge of a locomotive on the Panhandle Railroad. The defendant, the Pittsburg Company, is a corporation organized under the laws of the state, and prosecutes business at Ellwood, this county. The Beaver & Ellwood Railroad Company, a corporation having some connection with the defendant company, was engaged in 1890 in building a line of railroad to connect Ellwood with the Pittsburg & Ashtabula Railroad at a point known as Ellwood Junction, and distant about three miles from the town of Ellwood. The plaintiff's parents, it seemed, lived near Ellwood, and sometime in the early summer of 1890 he was on a visit to them, and met Mr. Green, who is the secretary and manager of the defendant company. It seems that he had learned that they were about to build a railroad, and that he made an application to Mr. Green for the position of locomotive engineer on the short line building from Ellwood to Ellwood Junction. He met Mr. Green at least twice prior to September 15, 1890, possibly more than twice. As the result of plaintiff's application to Mr. Green for employment, the latter, on September 8, 1890, wrote the following letter to the plaintiff:

"ELLWOOD, Pa., Sept. 8, 1890.
" N. P. NYE, Dennison, Ohio:

" Dear Sir.—I have referred the matter of your application for the position of engineer on our new road to our company, and am instructed to write to you that your application will be considered favorably if our prices and conditions would be satisfactory to you. It is proposed to give you steady employment throughout the year at $75.00 per month.

" Further, we understand that if this situation is secured to you you purchase a lot from the company at Ellwood and build

a residence property thereon. Terms of payment for lot can be made entirely satisfactory. The position we think is a very nice one and all things considered would probably net a person as much money at the end of the year as many places where a portion of the time higher wages are received. At all events this situation enables one to be with their family all the time except working hours, the same as if engaged in any other kind of business. The risk is reduced to a minimum, the work not difficult, and we believe an exceedingly healthful place for one to reside. We will be ready to use an engineer in a few days. We have several applications from some very good men who desire a place of this kind, but we thought best to communicate with you first.

"Kindly let me know your conclusions at your earliest con-̇ venience.

"Yours truly,

"MERRIT GREEN."

Now, you will observe, gentlemen, in that letter that it conveys to your mind:

1. That they had under consideration a proposition of the plaintiff for employment as a locomotive engineer.

2. That they offered him the position at $75.00 per month.

3. That if he accepted the position they understood that he would purchase a lot and build a residence. It also insured him employment throughout a whole year.

On receipt of this letter the plaintiff states he went to Ellwood and met Mr. Green at his home.

His brother, A. L. Nye, was with him,—so he testifies. The plaintiff testifies that he informed Mr. Green that he could not accept the offer contained in the letter, and he related to you what he alleges took place between Mr. Green and himself. . . .

The plaintiff has related to you what took place—what he said and what Mr. Green said at the meeting with Mr. Green soon after the receipt of the letter of September 8. He alleges that at that time there was made and concluded between him and the defendant company a complete contract, whereby the defendant company hired him as a locomotive engineer and were to compensate him at the rate of $85.00 per month for his services—extra time to be paid for in the same proportion. That they were also to sell him a lot and advance him money

to build a house, which amount he was to repay at the rate of $125 each three months, and the defendant company were to continue his employment until he had fully paid for the lot and the money so advanced at the rate of $125 per quarter.

The only bearing the testimony relative to the purchase of the lot and the building of the house has upon this case is to enable you to fix the time of his hiring, if you find a contract as the plaintiff states it. Plaintiff further states that shortly after the conversation he received the letter of September 15, 1890, which letter is as follows—the first letter, now, was written on the 8th of September, then he came from his home in Ohio to see Mr. Green, went home, and soon after that he tells you he received this letter of September 15, 1890:

"BEAVER FALLS, Pa., September 15, 1890.
"MR. N. P. NYE, Dennison, Ohio.

"Dear Sir—Pursuant to our conversation about the matter of employment with us would say that our people have considered the matter and think favorably of it with this exception —that if you receive the full price of eighty-five dollars, and the boy is sufficient to do the work of a fireman they should pay suitable wages for a boy. We have plenty of applications by good, strong men very glad to have the place at even less than thirty-five dollars. They think that a boy of eighteen should work in this place for one dollar a day, that after the expiration of six months increase this, and the expiration of six months more make a further increase. To make the matter specific, we make the following offer: will pay you eighty-five dollars per month, the boy twenty-five dollars for six months, and advance this five dollars a month for the second six months, and after that time thirty-five dollars. This proposition is based upon doing the work, that is, regular hours work, not night work, but to make connections and accommodate matters to circumstances, perhaps some work Sundays as I talked to you about. Will give you five days' notice to come when we are ready. If this satisfactory kindly drop me a line on receipt of this.

"Yours truly,
"MERRIT GREEN."

This letter plaintiff retained in his possession from the date

of its receipt, and he produced it on the trial and offered it in evidence as testimony in his behalf.

That soon after the 15th of September he received either a letter or telegram from Mr. Green desiring him to go to Pittsburg and bring from there to Ellwood a locomotive, which he states he did; and that he arrived at Ellwood on September 23, 1890, and went into the employ of the defendant company, and continued in their employ continuously until July 31, 1892, or when he was discharged.

He further alleges that on January 10, 1891, he bought of the defendants, in pursuance of his contract when he was hired, a lot in Ellwood at the price of $550; that defendants advanced him $1,200 with which to erect a building; that he gave defendants a mortgage on the lot to secure the said $1,750; that he built a house on the lot, and that between the date of the mortgage and the date of his discharge he had made payments on said mortgage and reduced the amount due them to $1,290.67.

A. L. Nye, brother of plaintiff, relates a conversation between his brother and Mr. Green which he alleges occurred at Mr. Green's house in Ellwood City between the dates of September 8th and September 15th, 1890. You will recall and remember what he testified to.

The plaintiff admits that he was paid in full for his services up to July 31, 1892, the date of his discharge. He alleges that he had always performed his duties as engineer well while in defendants' employ. He calls witnesses to testify as to this. He avers that he kept his part of the contract faithfully, that he was discharged without just cause, and before he had received compensation sufficient to pay for his house and lot, and to pay the debt, the money advanced, according to the contract between them. He brings this suit to recover from defendants the damages he alleges he has sustained by reason of the defendant company not keeping its contract with him, in that it discharged him wrongfully from his employment before he had paid for the lot and had repaid them the money they had advanced him.

These, in substance, are the averments of the plaintiff. If they are true, if the contract was as stated by plaintiff and his witnesses, if the defendant company committed a breach of

such contract, then the plaintiff is entitled to recover and your verdict should be in his favor.

The defendant company denies that there was a verbal contract such as the plaintiff sets up, or that there was any verbal contract whatever between them and the plaintiff. They allege that the contract is in writing, that all the contract they had with plaintiff is contained in the letter of September 15, 1890, —which I read to you. In support of this they call Mr. Green and Mr. Hartman ; and they also have read to you a portion of the testimony relating to this as given by A. L. Nye—so they allege—when he was a witness at a former trial of this case in this court.

Mr. Green tells you that he met the plaintiff prior to September 8, 1890; that the plaintiff applied to him for a position as locomotive engineer, and that as a result of such application he wrote the letter of September 8, 1890; that he wrote this at the direction of the company and in pursuance of what he had told them the plaintiff wanted; that after the letter was written, and between this date and September 15, the plaintiff came to see him, that a conversation was had between him and the plaintiff ; that the plaintiff refused the offer in the letter of September 8—that he declined to accept $75.00 per month, that he wanted $85.00 per month; that there was talk about the company employing a boy, whom plaintiff wished to employ as fireman. He avers that there was no contract concluded that day, or evening ; that he told plaintiff he would have to submit the proposition to the company before he could close it. He further states that he did submit it to Mr. Hartman, the president of the company, and the result was that he wrote the letter of September 15, 1890. He states that shortly thereafter, and before September 23, 1890, plaintiff telegraphed him accepting the terms of the letter of September 15 ; that this was all the contract and the only contract the company had with the plaintiff ; that there never was any agreement made by him on behalf of the company between the company and the defendant whereby the company was to sell plaintiff a lot and advance him any sum of money to build a house and keep plaintiff in their employ until he had fully paid the same back; that all the conversation they had was prior to September 15, 1890. . . .

The turning point in this case is narrowed down to two questions, in the view of the court:

First. Was the contract verbal? and was it made and concluded at Mr. Green's house between September 8, 1890, and September 15, 1890? Or (second), was it in writing? and is it evidenced in the letter of Mr. Green of September 15, 1890? On this subject you heard the evidence of the plaintiff and A. L. Nye, and of Mr. Green. . . .

If plaintiff received the letter of the 15th of September, 1890, which we read, if after he received it, either by telegram or by letter, he notified Mr. Green that he accepted its terms, we instruct you then, in that event, that the letter of September 15, 1890, is the contract, and the only contract, between the parties; and in that case the plaintiff cannot recover in this suit and your verdict should be in favor of the defendant.

If, however, you should wholly discard the evidence of Mr. Green, and the extracts from the testimony of the plaintiff as read before you yesterday, and you should find that the contract was not the letter, but was verbal, as testified to by the plaintiff, and by A. L. Nye, then you will find or assess his damages—then you should find for the plaintiff, and you will proceed to assess his damages in accordance with the instructions of the court in the answer to plaintiff's second point. The measure of damages which would control your verdict is the amount which he lost by reason of the breach of contract on the part of the defendants—if there was a breach.

The amount that he has lost would be, ordinarily, the amount he would have received if there had been no breach, less whatever sum he may have been able to earn in the meantime. . . .

[A Juryman: There were some understood you in your charge to say this, that, if we believed the plaintiff in this case had received that letter, and retained it in his possession, and subsequently within a few days had entered into the employ of this company, that was the contract.

The Court: No; I said if he received the letter and answered it; if he received the letter and answered it to Mr. Green, accepting its terms, and then entered the employ of the defendant company in pursuance of that, that he could not recover. That is what I said.] [6]

Defendant presented the following points:

1. The evidence of the plaintiff showing that the alleged parol contract for services upon which the plaintiff claims was made

prior to the letter of September 15, 1890, and the contract for lot of January 10, 1891, the evidence of such alleged contract for services is of no effect against the terms of said documents under the undisputed evidence relating to the same, and therefore the plaintiff is not entitled to recover. *Answer.* Refused. [1]

2. That under the evidence of the plaintiff the terms of the alleged parol contract were incomplete in this, that the lot to be purchased was not designated, nor the price fixed, nor the sum of money to be let determined, and therefore the plaintiff is not entitled to recover. *Answer:* Refused. [2]

3. That the contract of employment was evidenced by the letter of September 15, 1890, and the fact of entering on the employment subsequent thereto without any change in the terms thereof, and there is no sufficient evidence of fraud, accident or mistake in reference to said letter to vary the terms thereof, and therefore the plaintiff is not entitled to recover. *Answer:* This point is refused. As to that, we instruct you that if you find that defendant wrote the letter of September 15, 1890, addressed it to the plaintiff at his residence, and that the plaintiff received said letter, and retained it in his possession, and notified defendant either by letter or by telegram that he accepted its terms, and that subsequently and within a few days thereafter entered into the service of the defendant company without making any objection to the terms of said letter, then the said letter is the contract between the parties, the defendant had the right to discharge, and the plaintiff cannot recover. [3]

4. That the terms of contract of sale of lot embodied in the contract of January 10, 1891 (and the terms of said contract), were the terms of said contract, and there is no sufficient evidence of fraud, accident or mistake in relation thereto to vary the terms thereof, and therefore the plaintiff is not entitled to recover. *Answer:* This point is refused. We do not mean to say in refusing the point that the terms of the contract and the sale of lot embodied in the contract of January 10, 1891, were not the terms of said contract; but what we refuse to do is to instruct peremptorily to find in favor of the defendant. [4]

5. That under all the evidence in this case the plaintiff is not entitled to recover. *Answer:* Refused. Whether the plaintiff is entitled to recover or not we will submit to you under the instructions of our general charge. [5]

392 NYE *v.* PITTSBURG CO., Appellant.

Statement of Facts—Assignment of Errors. [2 Super. Ct.

The agreement for the purchase of lots referred to is as follows :

" Agreement entered into this 10th day of January, 1891, between the Pittsburgh Company, a corporation incorporated under the laws of the State of Pennsylvania, party of the first part, and N. P. Nye, of Ellwood City, party of second part, is in effect as follows : That whereas second party has this day paid to. the first party            dollars, receipt of which is hereby acknowledged, the first party agrees to give a good and sufficient deed to the said second party for the lot numbered 71, located in the plan of lots of Ellwood, Lawrence county, Pa., at the following prices and terms : Price of lot $550.   Terms, one-third due Dec. 31st, 1891, one-third due Dec. 31st, 1892, one-third due Dec. 31st, 1893, a sum not exceeding $1200 to be advanced in building house, payable $125 each three months from January 1st, 1891, the net proceeds of property of second party at Dennison, Ohio, when sold to be applied on above payment.   Interest payable semi-annually at 6 per cent.

" Conditioned that the said second party shall execute upon delivery of above mentioned deed, bond and mortgage for deferred payments herein mentioned, and that any failure upon the part of said second party to execute said bond and mortgage upon delivery of the deed shall work a forfeiture of the money first above mentioned paid, and this agreement will then be void.

" But should full settlement be made, bond and mortgage executed as herein provided upon delivery of the deed, which shall not be later than January 31st, 1891, then such first above mentioned sum of        shall be credited as so much paid on purchase price of said lot.

" In witness whereof the parties hereto have set their hands and seals.

" THE PITTSBURGH COMPANY,
" by MERRIT GREEN        [SEAL.]
" N. P. NYE"        [SEAL.]

Verdict and judgment for plaintiff for $950.

*Errors assigned* were, (1–5) answer to points ; (6) charge of the court as above indicated.

*John F. Sanderson,* with him *D. B. Kurtz, L. T. Kurtz, Walter Lyon* and *Charles H. McKee,* for appellant.—The letter of Merrit Green contains a full and complete and specific offer. Such is its language, "To make the matter specific we make the following offer." The undisputed testimony showed the due receipt of the letter; that shortly after its receipt the plaintiff entered the defendant's employment; and there was no allegation that any objection was made to the offer, or that any negotiation intervened.

There was a dispute as to whether a reply was sent accepting the offer.

The proposal or acceptance of an agreement need not necessarily be written or spoken, but may be acted wholly or in part: 3 Am. & Eng. Ency. of Law, 858; Patton v. Hessinger, 69 Pa. 311; Mactier v. Frith, 6 Wend. 103; s. c., 21 Am. Dec. 262; Bishop on Contracts, sec. 330.

*John. G. McConahy,* with him, *J. Norman Martin* and *B. A. Winternitz,* for appellee.—What had been agreed upon before the writing of the letter, and not contained in it, was not affected by it and was a matter of proof to be submitted to and determined by the jury. Without the light of the evidence of the verbal contract the letter shows no contract on which any action could be maintained against defendant. When a contract is partly in writing and partly verbal it is a parol contract: Vicary v. Moore, 2 Watts, 457; Sprangler v. Springer, 22 Pa. 454; McCauley v. Kellar, 130 Pa. 70; Malone v. Railroad, 157 Pa. 440.

If the letter were the contract, its language is obscure, uncertain and unintelligible, without evidence to explain it and point out its subject-matter and its application. In such a case it is proper to submit to the jury the decision of the question what the contract was: Thompson v. Trials, secs. 1086 1113; Edwards v. Goldsmith, 16 Pa. 43; Balckow v. Seymour, 17 C. B. (N. S.) 107.

A written agreement may be modified, explained, reformed or altogether set aside by parol evidence of an oral promise or contract material to the subject-matter of the contract, which induced the other party to put his name to it: Ferguson v. Rafferty, 128 Pa. 355; Walker v. France, 112 Pa. 210, Thomas v. Loose, 114 Pa. 35.

OPINION BY BEAVER, J., July 16, 1896:

There is no error in this record of which the appellant has reason to complain. The court below narrowed the margin of fact upon which the jury could base a verdict beyond what the case in our judgment warranted, but of this the appellant cannot complain. It was well observed in Phillips v. Meily, 106 Pa. 536, by the then Mr. Justice PAXSON, that " The English rule that parol evidence is inadmissible to vary the terms of a written instrument does not exist in this state. The cases are numerous upon this point. It is sufficient to refer to Kostenbader v. Peters, 80 Pa. 438. It would perhaps be more accurate to say that the rule has been relaxed, for the guards which this court has thrown around the modification of the rule have to some extent preserved the rule itself. In the present condition of the law of evidence public policy requires that we should do nothing to increase the facilities for destroying written instruments. As was well observed by our Brother TRUNKEY in the recent case of Juniata Building and Loan Association v. Hetzel, 103 Pa. 507, 'Now that parties are competent witnesses each may oppose his oath to the other's, and certainly when written contracts or obligations are sought to be impeached by defenses purely equitable the reason is stronger than formerly for enforcing the rules of evidence applicable to cases in equity.' " The rule above stated has prevailed in Pennsylvania since Herr, Lessee, v. Kirkbride, tried at nisi prius in Bucks county, March 24, 1773, which case was authoritatively reported by Mr. Chief Justice TILGHMAN, in his opinion in Wallace v. Baker, 1 Binney, 610.

It was not necessary, however, to invoke this rule in the present case. It is not the case of a written instrument varied in its effect by parol testimony. It is admitted by the appellant that the letter of the 8th of September was not the contract. It is sought however to bind the appellee by the letter of the 15th of September, 1890, and by a subsequent agreement for the sale of a lot and the erection of a house dated the 10th of January, 1891, which became executed by the deed of the appellant to the appellee and the mortgage of the appellee and wife to the appellant dated the 2d of February, 1891, and to exclude entirely all that led to and induced these written evidences of a broader and more comprehensive contract. The

appellee is bound by these writings but they do not, in our view
of the case, constitute the entire contract between the appellee
and the appellant.   Between the letter of the 8th of September
and that of the 15th of September, 1890, there was an agreement,
provisional it may be, entered into between Merrit Green repre-
senting the appellant and the appellee.   The letter of Septem-
ber 15 refers to it and seems to confirm it, with the exception
therein referred to.   The letter is addressed to the appellee and
informs him that " *Pursuant to our conversation* about the mat-
ter of employment with us would say that our people have con-
sidered the matter and *think favorably of it, with this exception*
that if you receive the full price of $85.00 and a boy is suffi-
cient to do the work of a fireman, they should pay suitable
wages for a boy." The exception, of course, relates to the
wages of the boy, and with that the letter has to do.   The offer
as to wages is specific.   As to all other things included in the
agreement, the conversation is allowed to govern.   The case,
therefore instead of being that of a written agreement as to
which parol testimony is sought to be introduced to vary its
effect, is, in fact, a parol agreement in which the letter above
referred to gives express assent, with the exception therein re-
ferred to, and the deed and mortgage simply give legal effect
to the part of the agreement which would not otherwise have
bound either party.   Even under the English rule, where an
agreement in writing is expressed in short and incomplete
terms, parol evidence is admissible to explain that which is per
se unintelligible, such explanation not being inconsistent with
the written terms : Sweet v. Lee, 3 Man. & Gran. 450 (42 Eng.
C. L. R. 240).   It is very certain that the letter of the 15th
of September, 1890, does not make a complete and intelli-
gible contract in itself.   Something else is necessary to its com-
pleteness, and that something is referred to in the letter itself as
the conversation had between the writer of the letter and the ap-
pellee.   The agreement contained in the conversation referred to
is, therefore, a question of fact which must in any trial of the case
be submitted to the jury.   If the facts of the case had brought
it within the rule in Thomas et al. v. Loose et al., 114 Pa. 35,
in which it was laid down by Mr. Justice TRUNKEY, in an
admirable opinion upon the subject, that " parol evidence is
admissible to establish a contemporaneous oral agreement which

induced the execution of a written contract, though it may vary, change or reform the instrument. It has been often said that such oral agreement must be shown by evidence that is clear, precise and indubitable, that is, it shall be found that the witnesses are credible, that they distinctly remember the facts to which they testify, that they narrate the details exactly and that their statements are true," the evidence would be sufficient to carry the case to the jury and justify a verdict for the appellee. Two witnesses testify to the agreement. They are corroborated by the letter of the 15th of September, and by other facts and circumstances connected with the purchase of the lot and the erection of the house mentioned by them, which appear in various ways in the testimony offered by both parties. The jury might very well therefore have found that their testimony was accurate and that the agreement was such as was claimed by the appellee and his brother. The facts of the case, however, do not bring it within the principle of Thomas v. Loose, supra. The parol evidence is not introduced for the purpose of varying, changing or reforming the proposition contained in the letter of the 15th of September, 1890, supra. It is rather intended to supply what is manifestly lacking in that letter, in order to make the contract complete, intelligible and consistent.

It follows, from what we have said, without further discussion, that the court could not have properly answered any of the appellant's points as requested, denying the right of the plaintiff in the court below to recover. The assignments of error are therefore all overruled and the judgment is affirmed.