Alfred Leggoe and William Shindle, trading as Alfred Leggoe & Co., *v.* Harry Mayer, A. Lincoln Landis and Peter C. Fritz, trading as Harry Mayer & Co., Appellants.

*Evidence—Parol evidence to explain subject-matter of contract.*

Evidence to explain the subject-matter of an agreement is essentially different from that which varies the terms in which the contract is conceived. It is a rule of law that every written instrument is to be interpreted according to the subject-matter and, where the written agreement is expressed in short and incomplete terms, parol evidence is admissible to explain that which is per se unintelligible, such explanation not being inconsistent with the written terms.

*Contract—Warranty of working quality of machine.*

A contract that a machine sold " be guaranteed in first class working order " necessarily refers not only to the operation of the machine as such but also to its ability to do the work for which it was intended in a proper way. If such machine when finished fails to do its work efficiently for any cause, the vendor in order to be entitled to recover must put it in proper condition for doing the work.

Argued Oct. 20, 1896. Appeal, No. 105, Nov. T., 1896, by defendant, from judgment of C. P. No. 3, Phila. Co., June T., 1895, No. 642, on verdict for plaintiff. Before Rice, P. J., Willard, Wickham, Beaver, Orlady and Smith, JJ. Reversed.

Assumpsit for machinery sold and delivered. Before Finletter, P. J.

It appeared from the evidence that the plaintiff claimed to recover $218 balance due for certain file machines delivered under defendant's written order; also $73.79 for extra work and material. There was evidence tending to show on the part of the defendants that plaintiff delivered all but one of the machines which were properly constructed and that the remaining machine, a rolling machine, was not made according to the order and was defective, unworkmanlike and useless. That all the machines, excepting the one in controversy, were fully paid for and that plaintiff was also paid on account of the defective machine while in course of construction $282, which amount

defendants claimed to recover back and which defendants, with the damages sustained by them, claimed to set off against plaintiff's claim and asked for a certificate for the difference. Neither plaintiff's statement nor the affidavit of defense was set out in the paper-books. Defendants pleaded non assumpsit, set-off, payment, payment with leave, etc.

Defendants' letter of acceptance was as follows:

"PHILADELPHIA, Jan. 15th, 1894.

"A LEGGOE & Co.,

"Gentlemen: For the net sum of $3000.00 we herewith place our order for:

1 Rolling Machine complete 8–18 in.
1 Cutting Machine No. 1
1    "         "     No. 2
1    "         "     No. 3
2    "         "     No. 4
1    "         "     No. 5
2    "         "     No. 6
1    "      to cut      16 in.
1    "         "        12 in.
1    "         "     saw file edges.
1 Large stiffening machine
1 Lead lap.

"All machinery to be built according to our instructions and to be guaranteed in first class working order.

"Yours truly,

"HARRY MAYER & Co."

The trial judge in his charge to the jury limited the jury to the consideration of the written evidence contained in the letter of the defendants to plaintiffs of January 15, 1894. The charge was as follows:

Gentlemen of the jury:—In all properly conducted business transactions in which any amount of money is involved, there are always preliminary considerations and negotiations among the parties. These communications and conversations are for the purpose of the parties understanding what their relations are to each other, so that eventually, when the matter is of importance enough, there is a contract entered into which may or may not be in writing, but at all events, as a general thing,

a condition is reached and a contract is entered into either in writing or in words. Specially, where a contract is in writing, the presumption of law and common sense is that all the conversations and communications, written or otherwise, passing between the parties are merged in the contract, and for that reason, when it is specifically entered into in writing, each party may know the terms of the contract and the obligations which rest upon it, and therefore it is that these antecedent conversations, whatever they were, are not a part of the contract. The parties are bound by their written expressions of what they agreed to do. As in this case, the contract between the parties was in an order which was given by the defendants to the plaintiff. In that order the defendants specifically declared that they wanted the plaintiffs to do what they required him to do, and as he accepted the order, and endeavored to fulfill it, that order is the law in this case, it is binding upon both parties alike, and nothing outside of that order should be considered by the jury.

Now, what are the terms of the contract? [I ought to say to you perhaps, that it seems that this machinery, so far as both parties were concerned, was an experiment. I do not understand that a like machine had been used or seen by the defendant, or had been made by the plaintiff. However that may be, the order which the defendant gave was that it should be constructed according to their instructions. That is to say they were to take the responsibility of the machine, in all its parts, in its material, its form of construction and everything else connected with it. It was their duty, if they thought it to be a matter of importance, to give specific instructions, either in writing or verbally as to how, and in what manner they desired the machine constructed. If, from the evidence, you are satisfied that they gave any such instructions, or if they did not do so, but left it to the plaintiff to build the machine and use the material and do everything in accordance with his own ideas, and if that machine did not answer the purposes of the defendant, it is too late for them to complain that its form of construction or the material of which it is constructed is not the proper kind, because it was their business and their duty to have him build it with the proper material and in the proper manner.] [5]

[You will observe that the contract is a very short one. All

it requires the plaintiff to do is to build the machine under their instructions, or build it according to his own idea if they gave him no instructions, and make it so that it will work as a machine. You will observe that that is the extent of the contract. There is no requirement, first of all, that it shall turn out the material, fourteen or sixteen or eighteen inches, in fact, it says nothing about the length, size or condition of the work to be turned out.] [6]

Again, if it was necessary that it should have been built stronger they should have instructed the plaintiffs to do so. If they left it entirely to him, they must take the responsibility, and if the machine does not work as they desired, then the fault is theirs. [So that, when you consider whether the proper material was used in the dies or in the weight of the foundation or the material, if they wanted it, or the work itself required a die to be made of any special or particular material, it was their duty to give him instructions to so make it, and not having given him such instructions they have no right to complain or say that he used material which was not as perfect in its parts as it ought to be.

All that was necessary for the plaintiff to do was to build the machine so that it would work as a machine, and you are to determine from the evidence whether, as a machine, it is all right.] [7] You are not required to find that it met the expectations of the plaintiff or defendant, [if the machine, when it was delivered, did the work properly, and did the work for which it was designed, then the contract of the plaintiffs was completed and ended, and it matters not if afterwards the machine became imperfect, and unable to do any work at all. So far as the working capacity of the machine is concerned, you have it from the only witness perhaps who should be relied on, from his experience in such matters, that it would turn out at times a dozen perfect articles and they would be followed by imperfect articles, and he said the reason for it, although he did not show how it occurred, was because the machine was not weighty enough. If that was the reason, the defendants have no right to complain because they have not shown that they gave any particular instructions to the plaintiff as to the weight of the machine or anything else.] [8]

It might very well be wondered how a machine could operate

perfectly and make ten or one dozen perfect articles, and then that be followed by imperfect articles.  Mr. Shindle was candid enough to say that where any machine was operated in such a way as to make a perfect article, if it turned out afterwards that imperfect articles were being made, it must be the fault of the operator, or because the machine was out of order, and I have no doubt that he spoke from his long experience.  As I said before what the plaintiff had to do was to furnish the machine which would produce the work, and if it did that, he is not to be deprived of compensation, because, for some reason, it did not meet the expectation of the defendant.

[They expected it to take the place of two or three other machines, and they had great expectations of economy in their business, and I have no doubt that, as good business men, they knew that where they were saving by machinery, the business is benefited.  However we have nothing to do with that.] [9]

If you are satisfied from the evidence that at the time the machinery was delivered, and especially when the defendant said it operated properly and perfectly, if, at that time it did operate properly and perfectly, then the defendants are required to show that the machinery was defective and would not produce proper work.  [The defendants have not thought proper to call the person who operated this machine.  They depended entirely upon Mr. Steinbeck who took his reports from the boy, and it is evidence that the defects were somewhat due to negligence, because any machine which is not oiled is likely to cause mischief, and therefore the jury may be justified in inferring that whoever undertook to run the machine, whether boy or man, without properly oiling it, was not a proper and competent person to work it.] [10]

It has been conceded under the evidence, that at times the machinery did operate properly, and it is for the defendant to show the inherent defects in the construction of the machine, not that there was not enough metal in it, but that its component parts were not constructed in such a manner to produce work of any kind—that is produce work which would go through this machinery and answer the purpose for which it was made.

[If it appears from the evidence that it passed through certain work properly, and the defendants acknowledged it, that

would be sufficient to entitle the plaintiff to recover the whole amount.] [11]

It is only in the event that you find from the evidence that it was not constructed in such a way as to produce the work, that would deprive the plaintiff of any portion of the contract price. If it was of such a character as not to do the work, then the defendants are not required to pay for it. If the machine, in its construction was so defective that you are compelled to say that it did not and could not do the work properly, then your verdict should be for the defendant for the amount of money · they paid and the necessary expenses attending its working. That was not very much [it appears that they only lost about $10.00 worth of steel, and 10, 12 or $15.00 in labor—that is a matter of very little importance. The greater question is, did the machine operate as a machine and turn out the work, at any time after it had been delivered by the plaintiff to the defendant? On that you have the evidence of the defendants themselves, that they were satisfied with the work and the machine was satisfactory.] [12]

. Verdict for plaintiff $231.08. Defendants appealed.

*Errors assigned*, were (1) the learned court below erred in limiting the defendant's testimony to proof only of loss of time of those employed in the work of experimenting with the machine, and in saying : " You are only entitled to the absolute loss of time for the people employed on that work while experimenting with the machine, because anything else would be purely speculative, otherwise you would ruin any man who made machines. I will confine the loss to the actual time wasted, because he had no right to keep the machine from month to month."

(2) The learned court below erred in striking out the following question and answer of Harry Mayer, one of the defendants : " Q. And this rolling machine was to take the place of how many power hammers ? A. Two."

(3) The learned court below erred in its examination of Frederick Steinbach, a witness for the defendant, by questioning him concerning matters not touched upon in his examination in chief and in reference to the supposititious cutting machine have no connection with the case.

(4–12) in specific portions of the charge to the jury, reciting same.

*Emanuel Furth* and *Jacob Singer*, for appellants.—By the law of contracts the proposal and acceptance together constitute a contract: Pollock on Contracts, 4th Eng. ed. *9; Steamboat Co. v. Brown, 54 Pa. 77. The parol evidence excluded from the consideration did not contradict the written contract but most directly related to the subject-matter and was necessarily meant to define the position of the parties and the nature of the subject-matter contracted about: Wright v. Gas. Co., 2 Pa. Superior Ct. 219. Parol evidence is admissible to show a verbal contemporaneous agreement which induced the execution of a written obligation: Brown v. Morange, 108 Pa. 69. It is unquestionably the law that there is an implied condition in every working contract that the work shall be performed in a proper and workmanlike manner and that it will be serviceable for the purpose for which it is constructed: Wade v. Haycock, 25 Pa. 382.

*J. Martin Rommel* for appellee.

OPINION BY BEAVER, J., November 9, 1896 :

The action here is assumpsit ; the pleas non assumpsit, set-off, etc. Under the plea of set-off, the defendants claimed to recover back $282 advanced on account of the construction of the machine, the contract price of which was the basis of the claim for recovery. As the case was disposed of in the court below, this part of it seems to have been lost sight of and is not now specially important. As the case goes back for a retrial, however, it may be well to keep it in mind, inasmuch as it may be important, if the jury should find the facts as contended for by the defendants. The claim of the plaintiff below was based upon a contract in the form of a letter written by the defendants, dated Philadelphia, January 15, 1894, addressed to the plaintiffs. Thirteen machines and one " lead lap " are specified but, inasmuch as all of them have been delivered and paid for, except one, it constitutes the subject-matter of the contract, so far as our inquiry in regard to the same is concerned. It is described in the letter as " 1 Rolling Machine Complete 8–18 in." The consideration for all the machinery ordered was the net sum of $3,000. " All machinery to be built according to our (defendants') instructions and to be guaranteed in first class working

order." The allegation of the plaintiffs is that the contract was fully complied with in every particular and this suit is an effort to recover the balance of $3,000 unpaid and $73.00 for extra work done by plaintiffs in and about the machinery specified in the contract. The plaintiffs' statement and the defendants' affidavit of defense are not printed in the paper-books of either party. It would have been much more satisfactory to us, if they had been. As to the essential facts for our consideration however, there is little dispute and we have no difficulty in reaching a conclusion in regard to them.

The errors complained of are contained in twelve distinct assignments. As to the third, ninth and tenth, nothing is said by the appellant in his argument and we see nothing seriously erroneous in what is therein set forth. These assignments are, therefore, overruled.

The fundamental error in the case, out of which grew a number of those complained of by the appellants, was the manner in which the trial judge in his charge limited the jury to the consideration of the written evidence, as contained in the letter of defendants to plaintiffs of January 15, 1894. His language in regard to the same is as follows: " The parties are bound by their written expression of what they agreed to do, as in this case the contract between the parties was in an order which was given by the defendant to the plaintiff. In that order the defendants specifically declared that (?) they wanted the plaintiff to do; what they required him to do; and, as he accepted the order and endeavored to fill it, that order is the law in this case. It is binding upon both parties alike and nothing outside of that order should be considered by the jury." The order, as already stated, is for 1 Rolling Machine Complete 8–18 in. For what was this rolling machine intended? Was it to roll lead, copper, iron or steel? Was it intended for rolling sheets or bars? Was its product to be flat, square or round? What do the figures 8–18 in. mean? Have they any reference to the size or character of the product of the machine? It is evident that, in order to determine the character of the machine, its weight, the strength of its parts, the details of its construction and whether or not the machine as finally furnished and operated was the machine ordered by the plaintiffs, it is necessary for us to secure information outside this letter or agreement. That information

can easily be supplied from the conversations between the plaintiffs and the defendants which preceded the order referred to and which are absolutely essential to an understanding of the order for the machine which constitutes the agreement in this case.   There was no effort, as we understand it, on the part of the defendants to contradict in any way this contract.   What they offer to show and what is shown conclusively by the evidence was that this was a rolling machine intended to roll blanks for steel files.   That these blanks were to be from eight to eighteen inches in length and to vary in width and thickness according to the requirements of the several lengths respectively.

These explanations, although contained in and easily inferred from the testimony of the plaintiffs themselves, were not allowed to be considered by the jury in determining the one essential element of the case, namely, whether the plaintiffs had complied with their agreement with the defendants in relation to the rolling machine and were, therefore, entitled to recover.   Upon what principle this evidence was excluded from the consideration of the jury it is difficult to tell.   The rule in England, clearly established in Sweet v. Lee, 3 M. & G. 450 (42 E. C. L. 240) that " Where an agreement in writing is expressed in short and incomplete terms, parol evidence is admissible to explain that which is per se unintelligible, such explanation not being inconsistent with the written terms," has been followed in our own state and to some extent enlarged.   The opinion of Mr. Justice WOODWARD (G. W.) in Barnhart v. Riddle, 29 Pa. 92, clearly sets forth the distinction between the parol evidence which tends to contradict or vary the *terms* of a written agreement and that which simply explains its *subject-matter*.   He says :  " But evidence to explain the subject-matter of an agreement is essentially different from that which varies the terms in which the contract is conceived.   It is the dictate of common sense and, therefore, a rule of law that every written instrument is to be interpreted according to the subject-matter and yet the nature and qualities of the subject-matter are seldom fully stated, even when alluded to in the writing."   In the present case the subject-matter is merely alluded to. It is necessary, in order to make the contract intelligible, to introduce parol testimony as to the character of the machine, the object for which it was intended, the work to be done by

it, the different sizes of file blanks to be rolled by it and numerous other questions concerning which the written agreement itself was entirely silent and yet as to none of which is there the slightest contradiction between the parol testimony actually in the case which furnishes this information and the written agreement: Gould v. Lee, 55 Pa. 99; Centenary M. E. Church v. Kline, 116 Pa. 146; McDonough v. Jolly, 165 Pa. 542; Wright v. Gas Co., 2 Pa. Superior Ct. 219; Nye v. Pittsburg Co., 2 Pa. Superior Ct. 384. The ruling of the trial judge in the court below upon this subject practically shut out the essentials of the defense of the appellant and left the jury groping entirely in the dark as to the plaintiff's compliance with the contract upon which he sought to recover. The second assignment of error is, therefore, sustained.

The sixth assignment must also be sustained. The error complained of there logically grows out of his construction of the contract by the trial judge in the court below. He says: "There is no requirement, first of all, that it (the machine) shall turn out the material fourteen or sixteen or eighteen inches. In fact, it says nothing about the length, size or condition of the work to be turned out," and yet the order for the machine contains the figures 8–18 in., which, with the explanation contained in the testimony of the plaintiff, clearly shows that the object of the machine was to turn out steel file blanks from eight to eighteen inches in length.

The acceptance by the plaintiffs of the defendants' order for the rolling machine therein referred to imposed upon them an obligation, in the absence of instructions by the defendants, to make the machine of such weight and of such materials as would enable it to do the work stipulated to be performed by it and this, independently of the warranty which is provided for in the order. The testimony in regard to the capacity of the machine for doing the work for which it was intended is somewhat contradictory. This was a question for the jury, under proper instructions. The trial judge, having eliminated from the case the parol testimony which explained the character of the rolling machine and the purpose for which it was intended, and having charged the jury that the defendants, having failed to give the plaintiffs instructions in regard to the construction of the machine, had "no right to complain or say that they, the plaintiffs, had used material which was not as perfect

in its parts as it ought to be," naturally fell into the error complained of in the seventh assignment of saying to the jury: "All that was necessary for the plaintiff to do was to build the machine so that it would work as a machine, and you are to determine from the evidence whether, as a machine, it is all right." This instruction left out of view entirely the duty of the plaintiffs to make a machine which would do the work for which it was intended, and practically declared that anything which would operate smoothly as a machine, in other words, that a machine whose related parts were so adjusted as to work harmoniously when in operation was a compliance with the contract. That this did not fairly express the view of the trial judge is apparent from what is contained in another part of the charge, to wit: "If the machine, when it was delivered, did the work properly and did the work for which it was *designed*, then the contract of the plaintiff was completed and ended, and it matters not if afterwards the machine became imperfect and unable to do any work at all;" but it is none the less erroneous and misleading. The latter quotation is not only a recognition of the fact that the machine must do its work as a machine but that it must perform the work for which it was designed, and that design can be ascertained only from the parol testimony which was excluded from the consideration of the jury. The clause in the defendants' order, of January 15, 1894, accepted by the plaintiffs and regarded as the contract in this case, "to be guaranteed in first class working order," must necessarily refer not only to the operation of the machine as such, but also to its ability to do the work for which it was intended in a proper way. It was evidently intended to be and was in effect a warranty of the machine itself. If the machine, when furnished, failed to do its work efficiently for any cause, the plaintiffs were bound to put it in proper condition for doing that work. If, upon repeated efforts, they failed to put it into such condition and finally abandoned it, so that the defendants were compelled to discard it entirely and purchase new machinery to do the work for which it was intended, the jury should have been told that, if the facts were so found by them, their verdict should be for the defendants: Wade v. Haycock, 25 Pa. 382. It follows, from what has been said, that the first, fifth, eighth and twelfth assignments of error must also be sustained.

Judgment reversed and a new venire awarded.