## CENTENARY M. E. CHURCH v. HIRAM CLIME.

ERROR TO THE COURT OF COMMON PLEAS NO. 1, OF PHILADELPHIA COUNTY.

Argued March 25, 1887—Decided April 18, 1887.

1. Parol evidence, which is explanatory of the subject matter of a written contract, consistent with its terms and necessary for its interpretation, is admissible.

2. Plaintiff entered into a written contract to complete a building partly erected of a certain kind of stone, but the kind of stone to be used by him was not stated in the contract. In a suit to recover for extra work alleged to have been caused by the quality of stone supplied, it was not error to admit evidence that the kind of stone which had been used in the building was verbally agreed upon by the parties as that to be used under the contract.

Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, GREEN and CLARK, JJ.; STERRETT, J., absent.

No. 203 July Term 1886, Sup. Ct.; court below, No. 603 December Term 1883, C. P.

On the trial in the court below of a *scire facias sur* a mechanic's lien which had been filed by Hiram Clime, a stone mason, against the church edifice and appurtenant curtilage of The Centenary M. E. Church of the city of Philadelphia, owner, and the board of trustees of the same, acting by Philip Rudolph, contractor, it appeared that said edifice had been begun and partly erected with a gray stone from the Bunting quarries, when on July 11, 1883, the plaintiff entered into a written contract with Philip Rudolph, acting for the board of trustees of the church, to complete the stone-work of the building according to the plans furnished by the architect at the rate of $4 per perch, and in consideration of that rate for the new work he was to do all necessary repairs and pointing to the old work on present building without additional cost; the kind of stone to be used was not provided for. The building having been completed, on February 15, 1884, the plaintiff filed a lien, accompanied by a bill of particulars of a claim for $4,738.64, embracing, as one item, "for extra work in cutting and dressing 2000 ft. (superficial measure) of stone at 25 cts. per foot, $500."

Mr. Clime, the plaintiff, being on the stand, testified (under objection overruled and bill sealed for the defendant) that at the time the contract was signed Mr. Rudolph told him that Bunting was to furnish the stone; that Mr. Bailey had also told him so; that he knew what that stone was as he had previously worked it and he made his bid accordingly; that Mr. Bunting did furnish nearly enough for the whole church, but when the front came to be builded the trustees furnished other stone which came from Gorman's quarry and was "flinty, dryer, harder; more treacherous and plucky;" that he had said to Mr. Bailey, " I want you distinctly to understand that these are not Bunting stone; that it will cost me double as much to work this stone as Bunting's." Mr. Bailey replied that the church people would make it all right. He further testified that it was worth double to cut Gorman's stone, of which there were about 2000 square feet of cut stone used, and that the contract was made in the presence of Rudolph, Bailey and

Wood, in a room at the church and he did not observe the omission in it.

Philip Rudolph, Rev. Wm. B. Wood and J. W. Bailey, called by defendant; testified that they did not remember that anything was said about the stone when the contract was made nor where the stone was to come from ; that the first story had been built with Bunting stone in 1875 or 1876.

The case being closed on the evidence the defendant requested the court to charge the jury that the plaintiff had failed to establish his claim for $500 for the extra work in cutting and dressing the stone, and to withdraw from the jury all the evidence relating thereto. The court declined to charge and order as requested, and gave defendant an exception. The jury found for the plaintiff, including the amount for extra work as claimed, whereupon the defendant took this writ, assigning for error the refusal of the court to charge as requested.

*Mr. Rudolph M. Schick* (with him *Mr. Marshall G. Kinney*), for the plaintiff in error :

Parol evidence which will be of effect to reform a written instrument must be clear, precise and indubitable : Cullmans v. Lindsay, 18 W. N. 509 ; Spencer v. Colt, 89 Penn. St. 318. But if the testimony established the verbal agreement beyond all doubt, that is not enough ; there must be fraud, accident or mistake, and the evidence of either must be clear, precise and indubitable : Thorne v. Warfflein, 100 Penn. St. 526.

The plaintiff's testimony that he knew the Bunting stone and made his bid accordingly, did not sustain the offer to prove that the parol agreement " was the inducement that led him to make the contract." He was testifying to a secret intent which can form no part of a contract : Juniata B. Association v. Hetzel, 103 Penn. St. 512 ; Spencer v. Colt, 89 Idem 314 ; Cullmans v. Lindsay, 18 W. N. 509.

The court should have withdrawn that part of the claim from the jury, as there was but one witness to support the allegation of the verbal agreement : Phillips v. Meily, 106 Penn. St. 544 ; Juniata B. Association v. Hetzel, 103 Idem, 514 ; Brawdy v. Brawdy, 7 Idem 157 ; Penn. Iron Co. v. Diller, 17 W. N. 7 ; North & West Branch R. Co. v. Swank, 105 Penn. St. 555 ; Bisp. Eq. 9 ; 3 Greenl. Ev. § 289.

*Mr. Ernest Lowengrund* and *Mr. F. Carroll Brewster* (with them *Mr. Octavius A. Law*), for defendant in error:

There is a distinction between this case and those in which parol evidence is admitted to reform a written instrument to make it speak a different language, or to annul it altogether.

As it is a leading rule in regard to written instruments that they are to be interpreted according to their subject matter, it is obvious that parol or verbal testimony must be resorted to to ascertain the nature and qualities of the subject to which the instrument refers: Greenl. Ev. §§ 286-7-8; Stark. Ev. § 1021; 2 Whart. Ev. §§ 961a, 962, 971; Add. Con. 847; Swett v. Shumway, 102 Mass. 367; Barnhart v. Riddle, 29 Penn. St. 92; McCullough v. Wainright, 14 Idem 171; Miller v. Fitchborn, 31 Idem 252; Steamboat Co. v. Brown, 54 Idem 77; Gould v. Lee, 55 Idem 99; Bertsch v. Lehigh C. & N. Co., 4 R. 130; Jackson v. Litch, 62 Penn. St. 451; Aldridge v. Eshleman, 46 Idem 420; Lycoming Ins. Co. v. Sailer, 67 Idem 108; Teutonia Ins. Co. v. Mund, 102 Idem 89; Morris's App., 88 Idem 368.

OPINION, MR. JUSTICE TRUNKEY:

Clime agreed to do all the stone work of the building according to the plans furnished by the architect, and also do all necessary repairing to the old work, for consideration of $4 per perch for the new. Nothing is said of the kind of stone in the writing.

The first story of the building was erected in 1876, roofed, and used for worship until 1883. That story was built of gray stone from Bunting's quarry, and is the work referred to in the written agreement, to be repaired and pointed. J. W. Bailey had charge of the construction of the work, and after consulting the trustees, made contracts. The defendant furnished stone from Bunting's quarry for the greater part of the work, but on Clime's complaint that he was losing time by delay in delivery, stone was furnished from Gorman's quarry. Thus far the parties agree as to the facts.

Clime testified that the stone from Gorman's was flinty, dryer, harder, more treacherous and plucky, and that he said to Bailey, "I want you distinctly to understand that these are not Bunting's stone; that it will cost me double as much to

work this stone as to work Bunting's." He replied that the church people would make that all right. And this testimony is uncontradicted.

There was testimony tending to· show that at and before the signing of the instrument, Rudolph and Bailey told Clime that Bunting was to furnish the stone, that Clime knew what that stone was as he had previously worked it, and thereupon he made the contract. The plaintiff was the sole witness to so testify, and on this point he was contradicted by Rudolph and Bailey.

The only assignment of error is, that the court refused to charge that "the plaintiff has failed to establish his claim for extra work in cutting and dressing two thousand feet (superficial measure) of stone at twenty-five cents per foot, amounting to $500, and the jury will disregard it in making up their ver. dict. All evidence relating thereto is withdrawn from the jury."

It was not contended in the argument that the point should have been affirmed for any reason other than that the plaintiff's claim involved a contradiction of, or addition to, the terms of the written agreement; and the defendant urged that the testimony was insufficient for reformation of the instrument. Perhaps the evidence was insufficient to reform the instrument; but if it was explanatory of the subject and consistent with what is written and necessary for its interpretation, it was sufficient to submit to the jury. Had the plaintiff demanded a softer stone, easier to work than Bunting's, the defendant would have understood that it was intended, if not expressed, that the new work should be of the kind of stone which was used in the first story. They would not have been satisfied with a call for stone of like color, more expensive for them to furnish than Bunting's, even if more profitable for the contractor. That the building had been already partly constructed of stone from a convenient quarry, tends to show that the parties meant it should be finished with stone of the same kind, in absence of evidence to the contrary. That the larger portion was furnished from that quarry before any was obtained from another, is a circumstance immediately following the making of the agreement.

It can hardly be doubted that the parties understood what stone should be furnished and used. A familiar principle is,

that the circumstances at the making of the instrument may be proved when by itself it is affected with uncertainty. The intention of the parties may be ascertained by extrinsic testimony, and this intention will be taken as the meaning of the parties expressed in the instrument, if it be a meaning which may be distinctly determined from a fair and reasonable interpretation of the words actually used. If the words are clear, a different contract from that expressed cannot be made by proof of outside circumstances. But when a matter necessarily pertaining to the subject of the contract is unmentioned therein, parol testimony is admissible to ascertain the meaning.

"It is a rule of interpretation that the intention of the parties to a contract is to be ascertained by applying its terms to the subject matter. The admission of parol testimony for such purpose does not infringe upon the rule which makes a written instrument the proper and only evidence of the agreement contained in it. . . . . It may be shown that a sample to which the terms of the contract are applicable, was exhibited or referred to in the negotiation, and other statements then made may be resorted to." Accordingly it has been held that in an action on a written contract relating to advertising charts, parol testimony is admissible to show the material of which the chart was to be made, and the manner in which it would be published: Swett v. Shumway, 102 Mass. 365.

The rule of law which forbids parol evidence to be received to contradict or vary a written instrument has reference to the terms of the writing. Evidence to explain the subject matter of an agreement is essentially different from that which varies the terms in which the contract is conceived: Barnhart v. Riddle, 29 Penn. St. 92. Parol evidence is not admissible to alter or contradict what is written, but is admissible to explain and define the subject of a written agreement: Gould v. Lee, 55 Idem 99.

Parol evidence of the circumstances, and of what was said by the parties as to the stone to be used under the contract, does not contradict or change any part of the writing, nor does it add another promise, or nullify any of the written terms. The plaintiff was to do the work, the defendant to furnish the stone, and each was bound to perform, one by furnishing and

Statement of Facts

the other by using the kind of stone to which they referred at the making of their agreement.

Had it been attempted to vary or contradict the terms of the agreement, or to show that the instrument meant either nothing or something else than is written, then the doctrine so well advanced in the defendant's argument, would apply with full effect.

Judgment affirmed.

MR. JUSTICE GORDON dissents.