RIGGINS v. POST.  (No. 5348.)

(Court of Civil Appeals of Texas. Austin. Oct. 14, 1914. On Motion for Rehearing, Jan. 6, 1915.)

1. VENDOR AND PURCHASER (§ 49*) — CONSTRUCTION OF CONTRACT — AMBIGUITY — "GOOD RECORD TITLE"—"TITLE."

A paragraph of a contract requiring each party to furnish to the other a complete abstract of title to each tract of land, each abstract to show a good record title thereto, was not of itself ambiguous; a "good record title," without words of limitation, meaning that the proper records shall show an unincumbered, fee-simple title, the legal estate in fee, free and clear of all valid claims, liens, and incumbrances, and the word "title" meaning ownership, absolute ownership, the unincumbered fee.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 80; Dec. Dig. § 49.*

For other definitions, see Words and Phrases, First and Second Series, Title.]

2. VENDOR AND PURCHASER (§ 46*) — CONSTRUCTION OF CONTRACT AS A WHOLE.

A contract to convey, like other instruments, must be construed as a whole.

[Ed. Note.—For other cases, see Vendor and Purchaser, Dec. Dig. § 46.*]

3. EVIDENCE (§ 65*)—PRESUMPTION—KNOWLEDGE OF LAW.

A person is presumed to know the law.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 85; Dec. Dig. § 65.*]

4. VENDOR AND PURCHASER (§ 251*)—VENDOR'S LIEN—PURCHASE-MONEY NOTE.

A purchase-money note for four leagues of county school land, dated October 9, 1902, payable 40 years after date, could not be legally paid off on July 1, 1912, but constituted a valid blanket lien on all the four leagues.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 624–635; Dec. Dig. § 251.*]

5. VENDOR AND PURCHASER (§ 134*)—CONTRACT TO REMOVE LIEN—BREACH.

Notwithstanding a vendor could not legally free part of the land from the lien of a purchase-money note, yet, if he specifically and in unambiguous language agreed to do so, his failure to do so is a breach of his contract.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 238, 250–254, 258; Dec. Dig. § 134.*]

6. VENDOR AND PURCHASER (§ 80*) — CONSTRUCTION OF CONTRACT—PRESUMPTION.

Knowledge of the vendor and the purchaser that the lien of a purchase-money note could not be removed might well raise the presumption that it was not contemplated that it should be removed, rebuttable, however, by proof to the contrary.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 132–135; Dec. Dig. § 80.*]

7. VENDOR AND PURCHASER (§ 80*) — CONSTRUCTION OF CONTRACT — SITUATION OF PARTIES.

Under a contract for the sale of land, reciting that a $10,500 indebtedness assumed by the purchaser was one-half of a purchase-money note for the land, which was a blanket lien on the entire four leagues, evidence that the purchaser knew of such lien, and, after the contract was drawn and signed, examined the abstract and found that it could be paid off a few months later, was admissible as part of the circumstances surrounding the parties, and to aid an understanding of whether the purchaser agreed to take one-half of the leagues knowing of the lien and not understanding that the vendor was to remove it, but relying upon a third person, who had assumed the other half of the indebtedness, to pay it off, and that, on his failure to do so, the part not assumed by him would be paid out of the proceeds of the sale of the other half.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 132–135; Dec. Dig. § 80.*]

8. VENDOR AND PURCHASER (§ 80*)—REMOVAL OF LIENS—PRESUMPTION.

A clause of a contract, providing that the purchaser was to eliminate an indebtedness against the east half of the tract, by its inclusion of that indebtedness tended to raise a presumption of the exclusion of other indebtedness.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 132–135; Dec. Dig. § 80.*]

9. VENDOR AND PURCHASER (§ 80*) — CONSTRUCTION OF CONTRACT — SITUATION OF PARTIES.

Upon a contract providing that the vendor was to eliminate an indebtedness against the east half of the four leagues, evidence that the purchaser knew of a blanket lien on the four leagues was admissible as a part of the circumstances surrounding the parties at the time of its execution and as bearing on whether the vendor agreed to remove such indebtedness.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 132–135; Dec. Dig. § 80.*]

10. EVIDENCE (§ 448*)—PAROL EVIDENCE—MISTAKE—CONTRACT FOR SALE OF LAND.

A mutual mistake may arise from a mistaken legal construction put upon the language by the parties to the contract; it is permissible to prove what legal construction the parties placed upon a contract when there is no ambiguity as to its legal meaning; but, when there is an ambiguity, oral testimony is admissible to show what legal effect the parties intended the contract to have, even though such effect differs from that which would be given it by the court, unaided by such oral testimony.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2066–2082, 2084; Dec. Dig. § 448.*]

11. VENDOR AND PURCHASER (§ 82*) — REMOVAL OF LIENS—EXTENSION OF TIME.

Where a contract for the sale of land was to expire July 1, 1912, the vendor's letter of July 2d asking for an extension of time in which to cure certain objections to his title, exclusive of a blanket lien, which he claimed that the purchaser knew when he entered into the contract, and the purchaser's letter granting such time and stating that he required a release from the vendor's lien, except as assumed by him, granted a further time in which to carry out the contract as it existed.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 138, 139; Dec. Dig. § 82.*]

12. VENDOR AND PURCHASER (§ 80*) — ACTION BY VENDOR — SUFFICIENCY OF EVIDENCE—ASSUMPTION OF LIENS.

In a vendor's action, evidence *held* to sustain a finding that, when the contract was made, it was agreed that the purchaser should take the land subject to a blanket lien.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 132–135; Dec. Dig. § 80.*]

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

On Motion for Rehearing.

13. EVIDENCE (§ ʿ450*)—PAROL EVIDENCE—EXPLAINING AMBIGUITY IN CONTRACT.

Where a contract for the sale of land recited certain specified incumbrances against one-half of it, amounting to $30,000, which included one-half of a $21,000 purchase-money note, and expressly stated that there was another and different indebtedness of $13,000 against the land, there was sufficient ambiguity to admit evidence that the parties thought that the $30,000 was the only incumbrance the vendor was to assume, that the $13,000 incumbrance was to be eliminated by him, and that the purchaser was to assume one-half of the blanket lien of $21,-000, and that he expected to be able to shift half of such amount to the other half of the land.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2066–2082, 2084; Dec. Dig. § 450.*]

Appeal from District Court, McLennan County; Tom L. McCullough, Judge.

Action by Sid Post against J. W. Riggins. Judgment for plaintiff, and defendant appeals. Affirmed.

Neff & Taylor and J. E. Yantis, all of Waco, and W. F. Ramsey and C. L. Black, both of Austin, for appellant. W. L. Eason, of Waco, for appellee.

JENKINS, J. [1, 2] In our former opinion, we held that the contract sued on was not ambiguous. The fourth paragraph reads as follows:

"Each party to furnish to the other complete abstracts of title to each tract of land brought down to date, and each abstract shall show a good record title thereto vested in the grantor in said deeds of conveyance."

Looking to this paragraph alone, the instrument is certainly not ambiguous.

"A good record title, in the absence of any words of limitation, means that the proper records must show an unincumbered, fee-simple title; in other words, 'the legal estate in fee, free and clear of all valid claims, liens, and incumbrances whatever.'" Jones v. Gardner, 10 Johns. (N. Y.) 269.

"The word 'title' is defined by the Century Dictionary to mean ownership; absolute ownership; the unincumbered fee." Langmede v. Weaver, 65 Ohio St. 17, 60 N. E. 997.

But this primary meaning of "good title" may be limited by other portions of a contract to convey, which, like other written instruments, must be interpreted as a whole. Looking to other portions of the contract under consideration, we see that it did not mean that either party should convey free of all incumbrances, for a number of incumbrances are mentioned, which the respective parties are to assume. Thus far there is still no difficulty, for a good title, without more, would mean a title free from all incumbrances, except those assumed by the respective parties. Appellant did not agree to assume the entire indebtedness of $21,000, but only one-half of the same.

But notwithstanding the fact that appellant assumed only one-half of the $21,000, which was a blanket lien on the entire four

leagues, the question at issue is: Did he agree to take the east half of said leagues, knowing of the existence of said blanket lien, and not understanding that appellee was to remove such incumbrance, but relying upon Holloway, who had assumed the other half of said indebtedness, to pay off the same, or, in case he or his assignees failed so to do, that said west half would be sold under foreclosure proceedings, and that the half of the debt not assumed by appellant would be paid out of the proceeds of such sale, it being primarily liable for said one-half of such indebtedness?

[3, 4] First, may such inference be reasonably drawn from anything contained in the instrument itself? The first paragraph of the contract recites that the four leagues are Hemphill county school lands; that the $10,500 indebtedness assumed by appellant is one-half of the purchase-money note given by John H. Traylor for said land, dated October 9, 1902, payable 40 years after date, bearing 5 per cent. interest. Appellant, like all other persons, is presumed to have known the law, and to have known that this note had not been paid off, and could not legally be paid off before the time fixed by the contract herein for executing deeds of conveyance, viz., July 1, 1912, and that the said Traylor note, at the time of the execution of said contract, did, and on July 1, 1912, and thereafter, so far as appears from said contract, until October 9, 1942, would, constitute a valid blanket lien on all of said four leagues of land.

[5] Notwithstanding appellee could not legally free the east half of the four leagues from the incumbrance thereon, still, if he specifically, by plain and unambiguous language, agreed to do so, his failure so to do would constitute a breach of his contract. Irrigation Co. v. Dodd, 162 S. W. 946; Dilley & Son v. Hervey & Wise, 160 S. W. 985.

[6] But the fact that it was known to both parties that a thing could not be done may well raise the presumption, in absence of explicit language to the contrary, that it was not contemplated that it should be done. But the inference arising from the presumption of a knowledge of the law may be rebutted by proof to the contrary.

[7] So likewise such presumption may be strengthened by evidence. Green, a witness for appellee, testified that appellee did know of the existence of the blanket lien, and that, at the very time the contract was drawn and signed by the parties, he and appellant examined the abstract to see when the $21,000 Traylor note could be payed off, and that said abstract showed, by reason of an option therein, it could be paid off on October 9, 1912, or within 10 days thereof. Said abstract so shows, and appellant did not deny that he examined the same at the time the contract was executed. This evi-

dence was admissible, not for the purpose of contradicting or varying the written contract, but to aid in understanding it. When there is any doubt as to the proper construction of a written contract, the situation of the parties and the circumstances surrounding them at the time of its execution may be shown by oral testimony, in order to aid in understanding the written instrument. Field v. Munson, 47 N. Y. 221; M. E. Church v. Clime, 116 Pa. 146, 9 Atl. 163.

[8, 9] The fifth clause of the contract provides that appellee is to eliminate a $13,000 indebtedness against the east half of the four leagues. Now if there was any other indebtedness against said land, not assumed by appellant, which appellee was to eliminate, why was it not also mentioned in this ·connection? The inclusion of one at least tends to raise the presumption of the exclusion of all others. It seems to us that a reasonable answer to this question is either that appellant did not know of such indebtedness, or that the appellee did not contract to remove the same. As we have seen, the appellant did know of such indebtedness. Evidence as to this fact was admissible as a part of the circumstances surrounding the parties at the time of the execution of the contract, in order to show that the construction of the contract, as contended for by appellee, is reasonable.

There is no evidence of a mutual mistake in the sense that, at the time the parties signed the contract, they supposed that it contained or omitted to contain some clause that was not intended to be inserted in or omitted from said contract.

[10] But a mutual mistake may arise from a mistaken legal construction put upon the language by the parties to the contract. Kelley v. Ward, 94 Tex. 295, 60 S. W. 311; Norris v. Belcher, 98 Tex. 182, 82 S. W. 502. We do not understand from these cases that it is permissible to prove what legal construction the parties placed upon the contract, when there is no ambiguity as to the legal meaning of the instrument. But, when ambiguity appears, it is permissible to show by oral testimony what legal effect the parties intended the instrument should have, even though such effect be different from that which would be given it by the court, unaided by such oral testimony.

[11] Appellant insists that the original contract expired by limitation by reason of appellee's failure to comply with same by July 1, 1912, and that a new contract was formed by appellee's letter of July 2, 1912, asking for an extension of time in which to cure certain objections to his title, and appellant's reply of same date granting such time. Appellant insists that further time was granted upon condition that appellee remove the Hemphill county blanket lien. We do not so understand said letters. Appellee in said letter did not ask for time in which to

remove the blanket lien, but only as to other objections which he did remove. As to the blanket lien, his letter says that appellant was informed of the blanket lien and entered into the contract with such knowledge. Fourteen objections to appellee's title had been pointed out by appellant's attorneys; the fourteenth being the existence of the blanket lien. Appellee's letter concludes as follows:

"I ask not exceeding 20 days' time from this date be allowed as a reasonable time to cure defects 1 to 12, inclusive, as contemplated by the contract. The thirteenth will be cured at the time of conveyance; all agreements therefor having been made. I do not consider that under the understanding and contract the condition of the $21,000 debt incumbers the title beyond construction of contract and agreement."

Appellant's reply was as follows:

"In pursuance of yours of the 2d inst. in the matter of the Hemphill county school land to me, the 20 days' time required by you to cure the objections made by my attorneys is granted. My attorneys require a valid release from the vendor's lien in favor of Hemphill county, except as assumed by me in the contract."

We think the effect of these letters was to grant further time in which to carry out the contract as it existed, concerning the proper construction of which appellee and appellant's attorneys differed.

For the reasons herein stated, we think that we erred in holding that the contract was not ambiguous. This case was submitted on special issues.

[12] The first question propounded by the court to the jury was as follows:

"When the contract of June 11, 1912, was made, was it agreed and understood by the parties thereto that the defendant Riggins would take the land subject to the Hemphill county blanket lien?"

To which question the jury answered, "Yes." The evidence supports this finding.

For the reasons stated, the appellee's motion for a rehearing is granted, the judgment heretofore rendered by us herein is set aside, and the judgment of the trial court is affirmed. We overrule appellee's cross-assignments. Our original opinion herein is withdrawn, and this opinion is adopted in lieu thereof.

Affirmed.

## Motion for Rehearing.

Appellant, in his motion for a rehearing, submits the propositions that, where a contract for the sale of land specifies certain indebtedness against the same, this is, in effect, a statement that there is no other indebtedness against said land, and that, where the aggregate amount of such indebtedness is stated, this is a warranty that there is no greater amount of indebtedness against it. As abstract propositions of law, these statements are correct. But, in order to be able to say that any rule of construction governs in the interpretation of an instrument, we must first know that the facts of the

case do not bring it within the modifying influence of any other rule of construction.

[13] As applied to the instant case, it is recited in the contract that there are certain specified incumbrances against the east half of the four leagues to be conveyed, and that these amount in the aggregate to $30,070, and that the debts specified include one-half, but no more, of the $21,000 Traylor purchase-money notes. But must this contract be therefore interpreted as representing that there was no other or greater indebtedness against the land? To do so would be to contradict the plain language of the instrument itself. The sixth clause of the contract expressly states that there was another and a different indebtedness of $13,000 against the land. The first clause of the contract implies that the other half of the Traylor note, not included in the specified indebtedness aggregating $30,070, existed against said land.

These seeming contradictions can be reconciled upon the theory that what the parties to the contract meant to express by the language used therein, and what they thought was the legal meaning of such language, was that the specified incumbrances, amounting in the aggregate to $30,070, were the only incumbrances that appellee was to assume; that the $13,000 incumbrance was to be eliminated by appellee; and that appellant was to take the land subject to the blanket lien of the $21,000, one half of which he assumed, and the other half he expected to be able to shift to Holloway's half of the land, or to look to Holloway's half to meet the same. This is, in effect, what the testimony of Green and Post shows, and what the jury found; and we are still of the opinion that there was a sufficient ambiguity in the contract to render such testimony admissible.

Motion overruled.

---

Ex parte McDOWELL.    (No. 3363.)

(Court of Criminal Appeals of Texas.   Dec. 23, 1914.)

1. HABEAS CORPUS (§ 85*)—COMMITMENT OF JUVENILE DELINQUENT — PRESUMPTION AS TO JUDGMENT.

On application for habeas corpus by one who had been committed as a juvenile delinquent, and later ordered released by the same court, the judgments of such court are presumed to be correct.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. §§ 77, 78; Dec. Dig. § 85.*]

2. HABEAS CORPUS (§ 102*)—DELINQUENTS—COMMITMENT—DISCRETION OF COURT.

Acts 33d Leg. c. 112, amending Code Cr. Proc. 1911, art. 1203, authorizing the court to commit the care of a child, charged as a delinquent, to a probate officer or other proper person, or allow it to remain in its home, subject to visitation, or other proper conditions, or committed to an institution, leaves the disposition of the child to the discretion of the court.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. §§ 87–89; Dec. Dig. § 102.*]

3. HABEAS CORPUS (§ 102*)—JUVENILE DELINQUENTS—ORDERS OF COMMITMENT AND RELEASE.

Where the court ordered a child committed for two years as a delinquent, under Acts 33d Leg. c. 112, amending Code Cr. Proc. 1911, art. 1203, and subsequently made an order releasing the child, it was entitled to release on habeas corpus; the second order being valid if the first was valid, and the detention being unauthorized if the first order was invalid.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. §§ 87–89; Dec. Dig. § 102.*]

4. HABEAS CORPUS (§ 44*)—JURISDICTION—JUVENILE DELINQUENT—CRIMINAL NATURE OF PROCEEDINGS—"CRIMINAL PROCEEDING."

Proceedings for the commitment of one charged as a juvenile delinquent, under Acts 33d Leg. c. 112, amending Code Cr. Proc. 1911, art. 1203, are "criminal" in their nature, so that the court of Criminal Appeals had jurisdiction of an application by the alleged delinquent for habeas corpus.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. § 35; Dec. Dig. § 44.*

For other definitions, see Words and Phrases, First and Second Series, Criminal Proceeding.]

Appeal from District Court, Tarrant County; J. W. Swayne, Judge.

Application by Percy McDowell for writ of habeas corpus. Applicant ordered discharged.

Mays & Mays, of Ft. Worth, for appellant. C. E. Lane, Asst. Atty. Gen., for the State.

DAVIDSON, J.   [1] Applicant is a boy 13 years of age. Substantially, the case is: He left the residence of his parents in Ft. Worth in company with two other boys, and was taken up in Bastrop county as a "delinquent" under Acts 33d Legislature, p. 218, § 9 (article 1203). The record also shows that the county attorney of Bastrop county filed a complaint and information charging the boy with being a delinquent child. A jury being waived, the court adjudged the boy a delinquent, and ordered him to be sent to the State Industrial School for Boys at Gatesville for a period of not less than two years. In accordance with this judgment the boy was carried to the State Industrial School for Boys and there incarcerated. The judgment was rendered on the 29th of August, 1914. On the following November 7th this order was set aside, upon a showing made by the parents satisfactory to the judge who rendered the original judgment, and he was ordered discharged from the State Industrial School for Boys and returned to his parents. This order of the court was disobeyed by the officers of said school.

While it might not be of any practical service in deciding the law question, still upon the showing to set aside the former judgment it was brought to the attention of the court in the application, which we suppose was supported by the facts, inasmuch as the judge granted the request, that the boy had always been an obedient boy at home, and his leaving home with the other two boys was his first dereliction. The complaint contain-