### NICOL *v.* FITCH.

1. CONTRACTS — STEAMBOAT AGENT — PROCURING FREIGHT — DESTRUCTION OF VESSEL.

    The destruction of one of a line of three steamboats will not relieve its owner from liability under a contract entered into by the owners of the three boats whereby a person was to be paid a specified salary and expenses to act as agent in securing freight for the boats during the shipping season, each owner to pay one-third of such salary and expenses, and each to have the proceeds from the freight carried by his boat.

2. SAME—ASSUMPSIT—COMMON COUNTS.

    The agent, having fully performed the services contemplated by the contract, may recover the stipulated proportion of his salary from the owner of the vessel destroyed, under the common counts in *assumpsit*.

Error to Wayne; Frazer, J. Submitted October 8, 1897. Decided November 17, 1897.

*Assumpsit* by John M. Nicol, assignee of Eber B. Ward, against Amza L. Fitch and others, for services rendered. From a judgment for plaintiff, defendants bring error. Affirmed.

*T. E. Tarsney, D. B. Hayes,* and *R. I. Lawson,* for appellants.

*Jonathan Palmer, Jr.* (*E. F. Bacon,* of counsel), for appellee.

HOOKER, J. In the spring of 1894, defendants, being the owners of a vessel named the Ohio, Capt. Galvin, representing the steamer Saginaw Valley, and Capt. Scott, representing the Ford, made arrangements to run these boats on different days, in connection with the Vermont Central Railway, as one line of boats, under the name of the Duluth & Ogdensburg Transportation Line, though they were owned and run by their respective owners. A contract was then made for the mutual benefit of the owners of the vessels, with Capt. Eber B. Ward, to act as agent in securing freight for these boats during the season, for which it was agreed that each should pay him one-third of his salary (which was $1,000), and of certain incidental expenses arranged for. Each owner was to have the proceeds from the freight carried by his boat. It is admitted that Capt. Ward performed the services contemplated during the season, and the owners of the other two boats paid their two-thirds of his salary. The defendants paid $107, and refused to pay more, upon the ground that their vessel, the Ohio, was lost during the season, and that the $107 paid was the proportionate share of his contract that Ward had earned at the time the vessel was lost. Plaintiff is the assignee of Ward, and he was allowed to recover upon a declaration containing the common counts, on the theory of a contract fully performed by Ward. Upon the other hand, it is contended that Ward did not perform his contract; that such was made impossible by the destruction of the Ohio; and that, therefore, his right of action, if he had any, was for a breach of the original contract by the defendants. The meritorious question involved is whether the loss of the Ohio terminated the contract. From a refusal to direct a verdict in their favor, the defendants have appealed.

It is obvious that the case is not one where the performance of the contract was a physical impossibility, as where one agreed to sell a horse, and the horse died, or to make cider from certain apples, which were immediately destroyed by fire. It is rather the case of one refusing to receive goods bargained for, because it had become impossible, through accident, for him to make a contemplated use of the goods. It is clear that such cases are not within the rule that one is released from a contract, when contingencies must be provided for in the contract if one would avoid the consequences. See *Beebe* v. *Johnson*, 19 Wend. 500 (32 Am. Dec. 518); *Dermott* v. *Jones*, 2 Wall. 1; *The Harriman*, 9 Wall. 161; *Blight* v. *Page*, 3 Bos. & P. 295, note; *Jones* v. *U. S.*, 96 U. S. 24. This doctrine is well supported by authorities cited in the opinions of the federal cases above referred to. See, also, *Ford* v. *Cotesworth*, L. R. 4 Q. B. 127.

A distinction is sought to be drawn between the cases of the class mentioned and those where the contract may be said to contemplate the continued existence of a particular person or thing which is the subject of the contract. This rule has been applied to the case of the rental of a music hall destroyed by fire, an apprentice who became ill, and could not render personal service, and a woman whose illness prevented her from performing as a pianist; but it was held not applicable to a case where one contracted to manufacture a certain iron work, and the mill was destroyed by fire. It was said:

"There was no physical or natural impossibility inherent in the nature of the thing to be performed, upon which a condition that the mill should continue can be predicated. * * * True, the contract specifies the mill as the place, but it necessarily has no importance except as designating the place of delivery." *Booth* v. *Mill Co.*, 60 N. Y. 491.

In *Taylor* v. *Caldwell*, 3 Best & S. 826, A. agreed with B. to give him the use of a music hall on specified

days, for the purpose of holding concerts. The hall was burned, and both parties were held discharged. Blackburn, J., said:

"The principle seems to us to be that, in contracts in which performance depends on the continued existence of a given person or thing, a condition is implied that the impossibility of performance, arising from the perishing of the person or thing, shall excuse the performance."

And it is said in *Dexter* v. *Norton*, 47 N. Y. 62 (7 Am. Rep. 415):

"The reason given for the rule is because, from the nature of the contract, it is apparent that the parties contracted on the basis of the continued existence of the particular person or thing."

That there are cases where such an inference is reasonable is obvious, as in cases of contract of marriage, and perhaps the case of the music hall; but it ought not to be said to be apparent, unless the character of the contract is such as to clearly disclose such intention, and there is danger that courts, in their desire to relieve contracting parties in hard cases, may extend it to contracts where the implication is not apparent. The supreme court of Missouri held it not applicable where an insurance company claimed that a contract by which an agent was employed for five years was terminated by its insolvency (*Lewis* v. *Insurance Co.*, 61 Mo. 538); and this court held a school district liable for the wages of a teacher, though it was found necessary to close the school, by reason of the prevalence of smallpox. See *Dewey* v. *School Dist.*, 43 Mich. 480, 38 Am. Rep. 208, and note. See, also, 2 Smith, Lead. Cas. (8th Ed.) 36.

In the case before us, the subject-matter of the contract was the procurement of freight to be transported. Ward undertook to give his time to this, and did so. On the part of the defendants a promise to pay was made. Ward performed his promise, and the defendants decline, not because they cannot pay, which is certainly a physical possibility, but because it has become inconvenient for

them to transport the goods owing to the loss of their vessel. The parties had agreed that Ward was to secure all the freight for transportation by this line that he could obtain, for which he was to receive $1,000, one-third of which sum was to be paid by the defendants. They were under no obligation to Ward to transport any of it in the Ohio, or at all, for that matter. The share the Ohio would transport would depend upon circumstances not within Ward's control. Had the defendants immediately substituted another boat for the Ohio, Ward would not have been discharged from the obligation of the contract, which would have been susceptible of performance. The case is not dissimilar from one whereby the captain of the Ohio should have agreed with the owner of goods, without qualification, to transport them, both parties expecting them to be transported in the Ohio. The loss of the vessel would not relieve the owners from the contract, as the freight could as well be transported in another vessel. If the contract bound defendants to transport the goods in the Ohio, the rule would be different. But it did not. In fact, it did not bind them to transport them at all. Ward, as their agent, was to secure the freight, but there is nothing in the record that shows that Ward had a right to insist that it be transported by defendants. His contract was performed when he secured the freight, and defendants had no obligation but to pay.

Ward having fully performed his contract, a declaration upon the common counts was proper.

Upon the undisputed testimony, the plaintiff was entitled to recover, and the court might properly have directed a verdict. It therefore becomes unnecessary to consider other questions.

The judgment is affirmed.

The other Justices concurred.