NORTHERN IRR. CO. v. DODD.

(Court of Civil Appeals of Texas. Austin. Nov. 12, 1913. On Motion for Rehearing, Jan. 14, 1914.)

1. WATERS AND WATER COURSES (§ 263*)—IRRIGATION — CONTRACTS — ACTIONS — PETITION.

To recover for a breach of a contract to furnish water for irrigation, plaintiff need not allege that defendant was negligent in failing to furnish water; absence of negligence not excusing a breach of contract.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 324; Dec. Dig. § 263.*]

2. WATERS AND WATER COURSES (§ 263*)—IRRIGATION—ACTIONS—PETITION—TERMS OF CONTRACT.

One suing for breach of contract to furnish water for irrigation need not allege in the petition the part of the contract providing that $4 an acre should be the maximum damage allowed for failure to furnish the water.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 324; Dec. Dig. § 263.*]

3. APPEAL AND ERROR (§ 1039*) — HARMLESS ERROR—PLEADINGS.

Failure to allege in the petition the part of the contract sued on, which limited plaintiff's right of recovery to a certain amount, was harmless to the defendant, where the entire contract was read in evidence, and the court limited plaintiff's recovery to the amount limited in the contract.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4075–4088; Dec. Dig. § 1039.*]

4. EXCEPTIONS, BILL OF (§ 8*)—EXCLUSION OF EVIDENCE.

A statement in the bill of exceptions, to the exclusion of evidence, that "defendant offered to prove" the facts stated is equivalent to a statement that witnesses would have testified according to the offer, so that the bill is not objectionable on the ground that it does not state what the witnesses would have testified.

[Ed. Note.—For other cases, see Exceptions, Bill of, Cent. Dig. § 10; Dec. Dig. § 8.*]

5. WATERS AND WATER COURSES (§ 261*)—IRRIGATION CONTRACTS—BREACH.

Where defendant irrigation company contracted to furnish plaintiff water sufficient to irrigate land leased by plaintiff from defendant, plaintiff's rights upon breach of contract by failure to furnish water are measured by the contract; the fact that it was an irrigation contract being immaterial.

[Ed. Note.—For other cases, see Waters and Water Courses, Dec. Dig. § 261.*]

6. WATERS AND WATER COURSES (§ 261*)—IRRIGATION—INSUFFICIENCY OF SUPPLY—EXCUSES—ACT OF GOD.

The fact that defendant irrigation company for about 10 years before the season of 1910 had procured water from the Colorado river, and that at no other time during such 10 years before the season of 1910 had such water supply failed, did not show that its failure in the season of 1910 by drought was due to the "act of God," excusing it on that ground from furnishing water for that season as contracted.

[Ed. Note.—For other cases, see Waters and Water Courses, Dec. Dig. § 261.*]

7. WORDS AND PHRASES—"ACT OF GOD."

The term "act of God" may be defined to be the result of such natural causes as could not have been reasonably foreseen and provided against.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 1, pp. 118–126.]

8. CONTRACTS (§ 303*)—BREACH—DEFENSES—ACT OF GOD.

In absence of statute, one who expressly contracts to do a thing is not as a rule excused from performance because it is rendered impossible by an act of God.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1409–1443; Dec. Dig. § 303.*]

On Motion for Rehearing.

9. WATERS AND WATER COURSES (§ 261*)—IRRIGATION—BREACH OF CONTRACT—EXCUSES—ACT OF GOD.

The exception to the general rule that an act of God will not excuse nonperformance of a contract, which excuses performance where it depends upon the continued existence of a particular thing or person which ceases to exist, would not apply to excuse nonperformance of a contract to furnish water for irrigation prevented by a drought stopping the usual water supply; the contract not so providing and stipulating the payment of a certain amount of damages per acre in case of failure to furnish water.

[Ed. Note.—For other cases, see Waters and Water Courses, Dec. Dig. § 261.*]

10. CONTRACTS (§ 152*)—CONSTRUCTION.

Courts should hesitate to change by implication the terms of express contracts.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 732, 733, 738; Dec. Dig. § 152.*]

Appeal from District Court, Matagorda County; Samuel J. Styles, Judge.

Action by E. J. Dodd against the Northern Irrigation Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Gaines & Corbett, of Bay City, for appellant. Holland & Murphy and Krause & Wilson, all of Bay City, for appellee.

Findings of Fact.

JENKINS, J. Appellee brought suit to recover damages against appellant for failure to furnish water for irrigation purposes, as per contract. The undisputed evidence shows that appellant and appellee entered into a written contract, whereby appellant was to lease to appellee 600 acres of land, belonging to it, for the year 1910, and was to furnish the seed for planting the same in rice and "water for the proper irrigation of the rice crop to be planted on the above-

described land from its canal or pumping plant; it being well understood and agreed between the parties hereto that said party of the first part is to furnish water from its canal or pumping plant, which, together with natural rainfall, will be sufficient to properly irrigate said land. It is understood, however, that should the party of the first part fail to furnish enough water, which together with the natural rainfall will be sufficient to make a crop of rice on the above-described premises, or should the natural rainfall, in case the party of the first part fails to furnish enough water, or any water, fail to be sufficient to make a crop of rice on said premises, then the first party shall forfeit as damages to the second party a sum not exceeding $4 per acre for the land not irrigated or supplied with water either by said party of the first part or the natural rainfall."

The appellee bound himself by said contract to cultivate said land in a proper manner and was to have one-half of the crop that he raised thereon.

Appellee complied with his part of the contract. Appellant failed to furnish any water after about the middle of June, and there was an insufficient rainfall, by reason of which the crop on said land was a total failure. Appellee alleged that the crop which he would have raised on said land, had appellant complied with its contract, would have been worth $27,000, and he sued for one-half of this amount. Appellant answered by general and special demurrer, and specially pleaded that part of the contract which limited appellee's claim for damages to $4 per acre. The court instructed the jury that, in the event they found for appellee, his measure of damages would be not exceeding $4 per acre, and the jury returned a verdict for appellee for this amount.

## Opinion.

[1] 1. Appellant's proposition under its first assignment of error is that its general demurrer should have been sustained, because appellee's petition did not allege that appellant was negligent in failing to furnish water. This assignment is overruled for the reason that this was not a suit to recover on account of negligence on the part of appellant, but for breach of contract. Lack of negligence is no excuse for a breach of contract.

[2] 2. Appellant's second and third assignments are to the effect that its demurrers should have been sustained, for the reason that appellee did not set out all of the written contract, and especially that he did not set out that portion of the contract which provided that $4 per acre should be the maximum damages allowed appellee. The petition alleged a contract whereby appellant was bound to furnish water to appellee for irrigating his rice crop, the failure to furnish such water, and the amount of damages he had suffered by breach of the contract. This petition stated a good cause of action, and it was not incumbent on appellee to plead that part of the contract which limited his right of recovery.

[3] Besides this, the error, if any, would have been harmless, for the reason that the entire contract was read in evidence, and the court limited appellee's right of recovery to $4 per acre.

3. Appellant in its fourth assignment of error complains of the action of the court in refusing to permit it to prove that the failure to furnish water was by reason of the drought of the year 1910, and that the Colorado river went dry.

[4] Appellee objects to our considering this assignment of error for the reason that the bill of exception does not state what the witnesses would have testified as to this matter. We think the bill of exception is sufficient. It is as follows: "Be it remembered: That upon the trial of the above numbered and styled cause in the court, on the 27th day of January, A. D. 1913, the following proceedings were had, to wit: The court refused to permit the defendant to prove by the witnesses A. M. Anderson, manager, B. J. Jones, engineer, and August Kelke, canal superintendent, of the defendant company, that the Northern Irrigation Company had been in operation for about ten years, and that at all times prior to the season of 1910 they had procured water from the Colorado river through the intake provided for the supplying of water for the season of 1910; that at no time prior to such season had there been a failure of its water supply in the Colorado river, or a failure of the crops on the canal; that the contract entered into between the plaintiff and the defendant was entered into on the faith of being supplied from the usual and customary source (that is, from the Colorado river, and from the intake to be raised by its pumping plant into its canal); that as a matter of fact it did supply all of the water that was needed up to and including the 10th to the 15th of June, A. D. 1910; that at such time there was a complete failure of the water supply in the Colorado river, and no water could be procured from said river for the irrigation of plaintiff's rice, or the irrigation of the crops of the other farmers on the defendant's canal; that no rice was grown or harvested on the canal of the defendant for the season, and that the sole reason for the failure to do so was the water supply in the Colorado river; that the manager of said defendant company kept his crew on said canal, kept fuel on hand, and kept the machinery in perfect condition and ready to pump and supply water at any moment that water could be obtained from the Colorado river, and if there had been a rise in said river, or an increase in the water from any source, it would have been able to supply it to the plaintiff. The court refused to per-

mit or consider said testimony on the ground that failure of the water supply in the Colorado river did not exempt the defendant from liability for failure to supply water to the ·plaintiff, because there was no provision in the contract sued upon limiting liability for such cause, to which action of the court in refusing to permit such testimony, or to consider the same for the reason mentioned, the defendant then and there excepted."

It appears from this bill of exception that defendant offered to prove the alleged facts, and that the court declined to hear any testimony in reference thereto, because there was no provision in the contract sued upon limiting liability for such cause. We think that the language "defendant offered to prove" is equivalent to a statement that the witnesses would have testified in accordance with said offer.

[5] 4. In support of its proposition that the court erred in refusing to permit the proof offered, as set forth in the preceding paragraph of this opinion, appellant cites the case of Raymond & Co. v. Erp, 146 S. W. 154. We do not think that the law, as announced in that case, is applicable to the instant case. There the plaintiff was entitled to water as matter of law, under the irrigation act of 1895, by reason of the fact that he owned or had a possessory right to land adjoining and contiguous to the irrigation canal, and said act provided "that in case of shortage of water from drought, accident or other cause, the water to be distributed shall be divided among all the consumers pro rata, according to the amount he or they may be entitled to, to the end that all shall suffer alike and preference be given to none."

In the instant case appellee was not the owner and had no possessory right, except under his lease contract, to the land for which appellant bound itself to furnish water for irrigation purposes. We think the law, as announced in the case of Moore-Cortes Canal Co. v. Gyle, 36 Tex. Civ. App. 442, 82 S. W. 350, is applicable to the facts in this case. In that case the court said: "The question of how far an irrigation canal company, organized under the laws of this state, may limit its liability for failure to furnish water to persons who have the right under the statute to demand such service from the company does not arise upon the facts of this case. The appellee is not the owner of land, nor has he any possessory right in land adjoining or contiguous to appellant's canal, except such right as he obtained by the lease contract entered into with appellant. This contract is the charter of his rights, and appellant's liability to him must be measured by its terms. Appellant could lease its land or not, as it pleased, and upon such condition as it saw fit."

In the instant case the appellant was the owner of the land leased to appellee and, for aught that appears in the record, owned all of the land that could be watered by its ir-

rigation plant. In fact, there is nothing in the record to show that any land, but that leased by appellee, could be irrigated from appellant's canal, except the general statement in the bill of exceptions that it offered to prove that no water could be procured from said river for the irrigation of plaintiff's rice, or the irrigation of the crops of other farmers on the defendant's canal. But, taking it for granted that there were other lands subject to irrigation from said canal, such lands, for aught that appears in the record, may have been the property of appellant. At least it is certain that the land leased to appellee was the land of appellant, and that appellant bound itself by its contract to furnish water sufficient for irrigating the same, and that appellant failed to comply with its contract. We think this case rests upon the general law with reference to contracts, and the fact that it was a contract to supply water for irrigation purposes is immaterial.

[6] 5. Appellant seeks to excuse itself from compliance with its contract upon the ground that it was prevented from doing so by the act of God. Had the proof which was offered, as shown by its bill of exception above set out, been admitted, we do not think it would have shown that it was prevented by an act of God from compliance with its contract. The proof offered was that appellant had been operating its irrigation plant "for about ten years, and that at all times prior to the season of 1910 they had procured water from the Colorado river through the intake provided for supplying water for the season of 1910." This, of course, means at all times during the ten years in which it had been in operation. Appellant further offered to prove "that at no time prior to such season (1910) had there been a failure of its water supply in the Colorado river, or a failure of the crops on the canal." This must be taken to mean that at no time during said ten years had there been such failure.

[7] The act of God may be defined to be the result of such natural causes as could not reasonably have been foreseen and provided against. Railway Co. v. Milling Co., 143 S. W. 1182; 1 Am. & Eng. Ency. Law, pp. 584, 585; 1 Cyc. 758. We do not think that, because there had not been a severe drought in Texas for ten years prior to any given period, it can be said that such drought could not reasonably be anticipated.

[8] 6. Regardless of whether or not the evidence offered would have shown that appellant's failure to furnish water was by reason of the act of God, we do not think that the court erred in excluding such testimony. Such fact is a sufficient excuse for the breach of contract on the part of a common carrier, but is not a sufficient excuse for such breach on the part of any one else, unless made so by statute. "It is a well-established rule of law that, where a person creates a charge or obligation upon himself by express contract, he will not be permitted to excuse himself

therefrom by pleading an act of God rendering such performance impossible." 1 Am. & Eng. Ency. Law, p. 588.

"A contract is not invalid simply because it turns out to be difficult, unreasonable, burdensome, or dangerous." 9 Cyc. p. 625.

"Where the performance becomes impossible subsequent to the making of the contract, the general rule is that the promisor is not discharged. As is said in an old case: 'Where the law creates a duty or charge, and the party is disabled to perform it without any fault in him, there the law will excuse him; but, where the party of his own contract creates a duty or charge upon himself, he is bound to make good, notwithstanding any accident by inevitable necessity, because he ought to have provided against it by his contract.' " 9 Cyc. 627, 628. An exception to this rule is where the performance of the contract is prevented by law.

The duty of transporting goods is imposed by law upon common carriers; and so it is by the irrigation act of 1895 upon irrigation companies to furnish water as to lands of others adjoining or contiguous to the irrigation canal; but the law did not impose any duty upon appellant to irrigate its own land. It bound itself by contract to do so and made no exception by reason of the act of God or inevitable accident, and we are not at liberty to read such exceptions into the contract.

For the reasons above stated, the judgment of the trial court is affirmed.

Affirmed.

## On Motion for Rehearing.

Appellant requests us to specifically pass on its fifth assignment of error, which is that the court erred in refusing to allow it to prove by appellee on his cross-examination that an unprecedented drought prevailed in Matagorda county and along the Colorado river throughout the season of 1910. We overrule this assignment for the reason that the act of God is no defense to appellee's cause of action.

[9] To the general rule that the act of God is no defense to the failure to perform a contract, there is an exception, viz., where the performance of the contract depends upon the continued existence of a particular person or thing. Wells v. Calnan, 107 Mass. 514, 9 Am. Rep. 65; Dexter v. Norton, 47 N. Y. 62, 7 Am. Rep. 416; Nicol v. Fitch, 115 Mich. 15, 72 N. W. 988, 69 Am. St. Rep. 543. We have found, however, but two characters of cases in which this exception has been applied: One is where personal service is to be performed, as where one person agrees to marry another, or an artist agrees to paint a picture; the other is where the continued existence of a particular thing, which is the basis of the agreement, is necessary to the performance of the contract. In such cases the courts have said that there is an implied agreement that the performance of the contract is to be contingent on the continued existence of the person or thing. Appellant insists that this principle is applicable to the instant case, inasmuch as the evidence shows that both parties to the contract expected that the water would be obtained from the Colorado river. But it was not so specified in the contract. A tender of water in appellant's irrigation ditch, suitable for irrigation purposes, obtained from wells, or from any other source, would have been a compliance with appellant's contract. It does not appear that it was a physical impossibility for appellant to comply with its contract on account of the failure of the water in the Colorado river, which it would be necessary to show in any event, in order to excuse appellant on account of drought. It is no answer to say that to have obtained the necessary water from any other source would have been very expensive. Appellant had the option under its contract to either incur such additional expense or to pay the damages, not exceeding $4 per acre.

In Dexter v. Norton, supra, the court said: "The plaintiff would not have been obliged to accept any other cotton than the bales specified in the bought note." In the instant case no particular water was specified in the contract, and it is probable that the water contemplated to be furnished was not in the Colorado river at the time the contract was made. Nor is any particular source from which the water was to be obtained mentioned. It is true that appellant expected to obtain the water from the Colorado river, and appellee expected that it would do so, but this is not sufficient to bring this contract within the exception mentioned.

In Summers v. Hibbard, 153 Ill. 102, 38 N. E. 899, 46 Am. St. Rep. 874, doubtless both parties contemplated that the iron contracted for should be manufactured at defendant's mill; and so in McGee v. Hill, 4 Port. (Ala.) 170, 29 Am. Dec. 277, it is evident from the defense interposed that it was expected that the corn contracted to be delivered should be raised on defendant's farm; but it was not so specified in the contracts, and the courts refused to read these provisions into the contracts by implication.

In the case of Middlesex Water Co. v. Knappmann Whiting Co., 64 N. J. Law, 240, 45 Atl. 692, 49 L. R. A. 572, 81 Am. St. Rep. 467, where an inevitable accident, not provided for in the contract, was interposed as a defense, the court quotes with approval from Mr. Chief Justice Shaw in Dam Co. v. Hovey, 21 Pick. (Mass.) 417, as follows: "The good sense of the rule seems to be this: That in case where, if an event happened, it must inevitably cause loss to one or the other contracting parties, the party who has contracted that such an event shall not happen, although he cannot specifically perform that contract, because the event may happen through the act of God or inevitable necessity, yet he shall take that risk and make good

all the loss which shall occur in consequence of the happening of the event contemplated. The party thus contracting takes the consequences." In the Water Company Case above cited there was no question as to the source from which the water was to be obtained, nor as to the machinery by which it was contemplated it would be supplied, but neither of these things were mentioned in the contract. In the instant case the event which appellant contracted should not happen was that appellee's crop should not suffer for want of water. No particular water then in existence was agreed to be furnished, and no exception was made in case there should be a drought.

[10] The maxim that as a man binds himself so shall he be bound is a sound one, and courts should hesitate to change express contracts by implication. The appellee may or may not have been willing to contract to cultivate appellant's land without payment of damages, if appellant's failure to furnish water should be occasioned by drought. All that we can say in this case is that he did not do so, and we are not at liberty to make a contract for him which he did not make for himself.

The motion for a rehearing is overruled.