NORTHERN IRR. CO. v. WATKINS et al.* (No. 7056.)

(Court of Civil Appeals of Texas. Galveston. Feb. 11, 1916. Rehearing Denied March 2, 1916.)

1. WATERS AND WATER COURSES ⟝261 — SUPPLY — CONTRACTS — NONPERFORMANCE— ACT OF GOD—RESERVATION IN CONTRACT.

Where the defendant agreed to furnish the plaintiff an amount of water, which, with the natural rainfall, would be sufficient to grow his crop of rice on land which he rented from the defendant, and the contract provided for damages if the water supply was insufficient, the defendant was liable notwithstanding an unusual drought caused a deficiency in the water supply.

[Ed. Note.—For other cases, see Waters and Water Courses, Dec. Dig. ⟝261.]

2. CONTRACTS ⊙=147 — CONSTRUCTION—POW-
ERS OF COURT.

A court, under its duty to construe a con-
tract cannot make a contract which the parties
did not contemplate.

[Ed. Note.—For other cases, see Contracts,
Cent. Dig. §§ 730, 748; Dec. Dig. ⊙=147.]

3. CONTRACTS ⊙=303 — ACTIONS—DEFENSES—
IMPOSSIBILITY OF PERFORMANCE.

Where the law creates a duty and the par-
ty is disabled to perform it without his fault,
and has no remedy, the law will excuse him,
and he will not be held liable in damages for
nonperformance.

[Ed. Note.—For other cases, see Contracts,
Cent. Dig. §§ 1409–1443; Dec. Dig. ⊙=303.]

4. CONTRACTS ⊙=303—NONPERFORMANCE—DE-
FENSES.

A contractor is not liable in damages when
the law intervenes to prevent the performance
of his contract.

[Ed. Note.—For other cases, see Contracts,
Cent. Dig. §§ 1409–1443; Dec. Dig. ⊙=303.]

5. CONTRACTS ⊙=303—NONPERFORMANCE—DE-
FENSES.

While the promisor cannot be compelled to
perform an undertaking impossible of perform-
ance through an act of God, he cannot, on the
ground of hardship or impossibility, escape lia-
bility in damages, in the absence of a reservation
covering such impossibility of performance.

[Ed. Note.—For other cases, see Contracts,
Cent. Dig. §§ 1409–1443; Dec. Dig. ⊙=303.]

6. CONTRACTS ⊙=322—NONPERFORMANCE—DE-
FENSES—EVIDENCE—ADMISSIBILITY.

In such case, evidence that the contract was
impossible of performance was inadmissible;
that being no defense.

[Ed. Note.—For other cases, see Contracts,
Cent. Dig. §§ 1306, 1307, 1339, 1347, 1348, 1465,
1492, 1534–1542, 1754, 1768, 1772, 1801, 1802,
1804–1808, 1815, 1816; Dec. Dig. ⊙=322.]

7. CONTRACTS ⊙=323—NONPERFORMANCE—DE-
FENSES—QUESTIONS FOR JURY.

In such case, no question was presented
for the jury on the issue of impossibility of per-
formance.

[Ed. Note.—For other cases, see Contracts,
Cent. Dig. §§ 1311, 1349, 1466, 1543–1548, 1827,
1827½; Dec. Dig. ⊙=323.]

8. WATERS AND WATER COURSES ⊙=263—SUP-
PLY—CONTRACTS — CONDITIONS — PERFORM-
ANCE—NECESSITY OF DEMAND.

Where the defendant agreed to furnish a
sufficient supply of water for irrigating lands
for plaintiff's rice crop, the contract requiring
the plaintiff to demand water, in writing, be-
fore the time at which he expected to use it,
and there was an unusual drought and all par-
ties knew well that the water could not be fur-
nished if demanded, it was no defense to plain-
tiff's suit for damages on account of failure to
furnish water that he failed to demand it as re-
quired by the contract.

[Ed. Note.—For other cases, see Waters and
Water Courses, Cent. Dig. § 324; Dec. Dig. ⊙=
263.]

9. WATERS AND WATER COURSES ⊙=232—IR-
RIGATION COMPANIES—ULTRA VIRES ACTS—
WHAT CONSTITUTES.

It is not an ultra vires act for a corpora-
tion, organized for the purpose of irrigating cer-
tain lands which it held, to contract to supply
its lessee sufficient water, which, with the nat-
ural rainfall, would produce a rice crop on the
land, without any reservation to cover impossi-
bility of performance through act of God.

[Ed. Note.—For other cases, see Waters and
Water Courses, Cent. Dig. §§ 321, 322; Dec.
Dig. ⊙=232.]

Appeal from District Court, Matagorda
County; Sam'l J. Styles, Judge.

Action by E. Watkins and others against
the Northern Irrigation Company. From a
judgment on a directed verdict for the plain-
tiffs, the defendant appeals. Affirmed.

Gaines & Corbett, of Bay City, for appel-
lant. Holland & Murphy and Krause & Wil-
son, all of Bay City, for appellees.

LANE, J. For the purposes of this opinion
we deem the following statement sufficient:

The Northern Irrigation Company, a cor-
poration, appellant herein, was, on the 28th
day of December, 1909, the owner of a large
body of land in Matagorda county, Tex., up-
on which and adjacent thereto it owned and
operated an irrigation plant, consisting of all
things necessary for the purpose of irrigating
said land. On said date the said Irrigation
Company, as party of the first part, entered
into a written contract with appellees, E.
Watkins and Sam Watkins. In said contract,
among other things not necessary to be stat-
ed, it is, in substance, provided:

That the party of the first part, for and in
consideration of the covenants, promises, and
agreements hereinafter undertaken to be kept
and performed by the party of the second
part, has devised and leased to the party of
the second part 500 acres of its land for the
year 1910.

That the party of the first part agrees to
furnish to the party of the second part all
the seed rice necessary to properly plant said
land.

That said party of the first part further
agrees to furnish water for the proper irriga-
tion of the rice crop to be planted on said
land from its canal or pumping plant, it being
well understood and agreed between the par-
ties hereto, that said party of the first part
is to furnish water from its canal or pumping
plant, which, together with the natural rain-
fall, will be sufficient to properly irrigate said
land. It is understood, however, that should
the party of the first part fail to furnish
enough water, which, together with the nat-
ural rainfall, will be sufficient to make a crop
of rice on the above-described premises, or
should the natural rainfall, in case the first
party fails to furnish enough water or any
water, fail to be sufficient to make a crop of
rice on said premises, then the first party
shall forfeit, as damages to the second party,
a sum not exceeding $4 per acre for the land
not irrigated or supplied with water, either
by said first party or the natural rainfall.
But in no case shall said company be liable
for a greater amount of damages than the
amount actually sustained and suffered by
party of the second part, and in no event to
exceed the sum of $4 per acre for the land
planted in rice which did not receive suffi-
cient water, and party of the first part shall
not be liable for any damages if the crop

⊙=For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

yields as much as five sacks per acre, nor if the land is not properly planted, cultivated, and a good stand secured. When party of the second part desires any land watered, he shall apply therefor in the manner hereinafter provided and shall call upon the canal superintendent of the party of the first part to go upon the land, before the time for watering the same, after such notice arrives, and they shall together examine all lead ditches, check levees, all outside levees, and all connections, and shall then determine and agree whether or not they are in such condition as is necessary to hold the water and properly cover said land; and if it is agreed that they are, this fact shall be reduced to writing, dated, and signed by each of them, and if it is agreed that they are not, this fact and the extent of such unreadiness shall be reduced to writing, dated, and signed by each of them. The foregoing provisions must be fully complied with before any claim for damages for not watering said land can be asserted or claimed. When any request for water is made, the land for which the water is demanded and the crop thereon shall be examined by the farm superintendent of party of the first part, upon written request of party of the second part, filed with the party of the first part at the time that the request for water is filed, and both of said notices shall be delivered and filed in the office at headquarters on the farm. When such request is so filed and written five days thereafter such superintendent shall go upon said land and examine the stand of rice and determine whether or not the same is sufficiently good to justify the watering of same, and unless there is at least three-fourths of a perfect stand on said land, the same shall not be watered, except at the option of the party of the first part. The decision of such superintendent as to the stand of rice shall be final and conclusive between the parties hereto, and the fact of such examination by such superintendent and his decision as to the kind of stand he finds shall, at the time, be reduced to writing, dated, and signed and filed in the office of the party of the first part; and until these conditions shall be complied with there shall be no obligation on the part of the party of the first part to water said land, and no claim for damages for not watering the same shall ever be made. The fact that the party of the first part does furnish water, in whole or in part, to water any land, shall not be considered as a waiver of the conditions named herein, nor any of them, and shall not make the party of the first part liable to furnish any more water to said land, nor for damages in any amount whatsoever. Before any land is planted it should be properly prepared for planting, and before it is planted the superintendent of the farm shall be called upon to examine the same, and shall then decide whether or not it is so prepared, and, if not, it shall, by par-

ty of the second part, be put in good condition under the direction of such superintendent and the fact of such examination and approval shall be reduced to writing, dated, and signed by both parties, and until this is done no obligation to water the same shall rest upon party of the first part, but it may water the same at its option.

That said party of the second part further agrees that they will properly and in due time plow and prepare that portion of said land which is to be planted in rice, and that they will, before the 20th day of May, 190—, have said land planted.

That when party of the second part shall want water, they shall make application in writing, addressed to the manager of party of the first part, and shall name and give as near as possible the number of acres to be irrigated, and whenever water is wanted by the party of the second part they shall give five days' notice of such desire so that the distribution may be properly regulated.

That in consideration of the leasing and renting of said land above described, by the party of the first part to the party of the second part, and in consideration of the furnishing of all seed rice necessary to properly plant the land above described, and in consideration for furnishing water as herein specified, and in consideration for other undertakings herein assumed by party of the first part, the party of the second part agree and bind themselves to deliver to the party of the first part, after said crop of rice has matured, first, one-half of the entire rice crop grown on the land above described, said one-half to be delivered to the party of the first part at threshing machine, at each setting of the separator, sacked in good new 9-ounce 64-inch sacks, properly sewed up, as soon as threshed. The delivery here mentioned means the setting apart and piling of every other sack as it comes from the machine. Said party of the first part, however, is to pay 10 cents per sack as threshing charges for its share of said crop; and, second, the remaining balance of said crop shall belong to party of the second part.

Appellees, E. Watkins and Sam Watkins, filed this suit in the district court of Matagorda county, on the 1st day of April, 1912, and in their petition they allege a compliance with the terms of said contract on their part and a breach of the same on the part of said Northern Irrigation Company, in that said company failed to furnish them sufficient water, together with the rainfall, to mature their rice crop, and that by reason of such failure they made no crop, to their damage in the sum of $9,000, for which they pray judgment, as well as for all such other and further relief, both in law and equity, to which they may be found justly entitled. The Northern Irrigation Company answered admitting the execution of said contract, and that it failed to furnish water for appellees'

crop as it had contracted to do, and that by reason of such failure no crop was grown on the land leased by it to appellees, and further specially pleaded, in avoidance of appellees' demand: First, that the plaintiffs were the tenants of defendant under a written contract, and that the only rights they had, or to which they were entitled, were those acquired under said contract, which written contract, among other provisions, contains the following:

"Said party of the first part further agrees to furnish water for the proper irrigation of the rice crop to be planted on the above-described land from its canal or pumping plant, it being well understood and agreed between the parties hereto, that said party of the first part is to furnish water from its canal or pumping plant, which, together with the natural rainfall, will be sufficient to properly irrigate said land. It is understood, however, that should the party of the first part fail to furnish enough water, which, together with the natural rainfall, will be sufficient to make a crop of rice on the above-described premises, or should the natural rainfall, in case the first party fails to furnish enough water or any water sufficient to make a crop of rice on said premises, then the first party shall forfeit as damages to the second party a sum not exceeding $4.00 per acre for the land not irrigated or supplied with water either by said first party or the natural rainfall. But in no case shall said company be liable for a greater amount of damages than the amount actually sustained and suffered by party of the second part, and in no event to exceed the sum of $4.00 per acre for the land planted in rice which did not receive sufficient water, and party of the first part shall not be liable for any damages if crop yields as much as five sacks per acre, nor if the land is not properly planted, cultivated, and a good stand secured."

That the contract between the parties provided that when the parties of the second part (plaintiffs) shall want water they shall make application in writing addressed to the manager of the party of the first part (defendant), and shall name and give, as near as possible, the number of acres to be irrigated, and that such notice shall be given five days in advance. It is further alleged that plaintiff never made written demand for water, and that the necessity for such written demand was never waived by the defendant, and therefore there was no obligation on the part of defendant under the terms of said contract to furnish plaintiff any water, and that therefore they cannot recover in this action.

The defendant further specially pleaded as follows:

"This defendant says that if there was ever shortage of water, and if this defendant did not furnish or deliver to the plaintiffs water which, together with the natural rainfall would be sufficient to irrigate plaintiffs' rice crop, that failure so to do was occasioned by act of God, to wit, an unprecedented drought and lack of water in the Colorado river.

"That during the current crop year of 1910, and at all times during said year when the rice crop of the plaintiffs was in need of water for its irrigation, an unprecedented drought prevailed in Matagorda county, Tex., and likewise in that section of the country from the drainage of which the headwaters of the Colorado river were fed.

"That the plaintiffs well knew and it was by both parties contemplated and intended, at the time of the signing of said agreement to water said land, and at all times during the period of contractual relationship between the parties, that the defendant was to furnish water from the Colorado river, through its canal and pumping plant, which, together with the natural rainfall, would be sufficient to irrigate the plaintiffs' rice crop; that the plaintiffs and defendant never contemplated or intended that water for irrigation of said rice crop was to be procured by the defendant from any other source than the Colorado river; that the pumping plant of the defendant was located on the banks of the Colorado river, and the canals of the defendant immediately adjoined and connected with the pumping plant, and is adjacent to the Colorado river; that the plaintiffs well knew that it was impossible and impracticable, and not contemplated, that the defendant should procure water for the proper irrigation of the rice crop of the plaintiffs elsewhere or otherwise than from the Colorado river.

"That the Colorado river, during the entire rice watering season of 1910, and especially during the months of May, June, July, August, and September, adjacent to the pumping plant of the defendant and at nearby points, contained less water than was ever before known in the history of Matagorda county; that the drought, which prevailed both at the source of the Colorado river, and through the intermediate tier of counties from said source to Matagorda county, and in Matagorda county, during said period, was unprecedented, and the like had never previously occurred in the record history of Matagorda county.

"That there was not sufficient water in the Colorado river to enable the defendant to pump water and furnish the same to the plaintiffs; that the defendant made every possible effort to procure water and furnish the same, and expended large sums of money in so doing, and was ready at all times, both day and night, to procure and distribute what water might be available, and made every effort so to do, but that no water sufficient in volume or quantity to enable the defendant to operate its pumping plant was available, and no water could be procured by the defendant from any source, and it was a physical impossibility for the defendant to furnish any more water than was furnished to the plaintiffs for the irrigation of plaintiffs' rice crop, and that the plaintiffs well knew and contemplated at the time of the making of the contract with the defendant that if water could not be procured by the defendant from the Colorado river, that it was a physical impossibility for the defendant to procure the same, and the plaintiffs never intended that the defendant should procure water from any other source than the Colorado river.

"That the failure of the defendant to furnish water to the plaintiffs, if it failed to do so, sufficient to irrigate said rice crop, was due solely to causes over which the defendant had no control, and due solely to the unprecedented drought prevailing, and to the unprecedented low stage of water in the Colorado river, and was due solely to an act of God or nature, and said act of God was the proximate cause of the damage suffered by the plaintiffs.

"That the contract between the parties provided that in event the water furnished by this defendant and the natural rainfall were insufficient to make a crop of rice, the defendant should forfeit damages to the plaintiff for the land not irrigated.

"That said agreement of forfeiture was made contemplating the continuous and normal flow and supply of water in the Colorado river opposite the pumping plant of the defendant, and in the making of said agreement for irrigating said rice crop the plaintiffs and the defendant intended and expected that the water to be fur-

nished by the defendant was to be procured from the Colorado river, and not elsewhere, and contemplated the continued existence of said water in said river; that the unprecedented drought in Matagorda county, as before set forth, destroyed the normal flow of the Colorado river in Matagorda county, and opposite the defendant's pumping plant, and as a result of such unprecedented drought, which had never before occurred in the recorded history of Matagorda county (which was an act of God and beyond the control of this defendant), and the destruction of the water supply in the Colorado river, the defendant, Northern Irrigation Company, was discharged from the performance of said contract, and its obligations thereunder terminated.

"That there was an implied condition in the contract of irrigation between the parties that the water in the Colorado river should continue to be in existence in sufficient quantity at the time irrigation was necessary, and the plaintiffs and the defendant so contemplated the continued existence of the water in the Colorado river; that said water was destroyed and made unavailable by the unprecedented drought in Matagorda county, opposite the defendant's pumping plant, and thereby all obligation on the part of the defendant to furnish water to the plaintiffs was terminated, and the defendant discharged from performance of the contract.

"That this defendant is not an insurance company, and its only charter powers are as follows: 'For the purpose of constructing, maintaining and operating canals, ditches, flumes, laterals, reservoirs, dams, lakes and wells and of conducting and transferring water to all persons entitled to the same for irrigation, mining, milling, to cities and towns for waterworks and for stock raising, and for the purpose of building storage reservoirs, for the collection and storage of water for the purposes before mentioned.'

"That this defendant could not, under its charter, insure the supply of water to the plaintiff when such water was not, as in the present instance, obtainable from the contemplated source of supply, to wit, the Colorado river, and that plaintiffs well knew, at the time of the making of said contract between the parties, the power and extent of defendant's charter powers, or, if the plaintiff did not know the extent of such charter powers, they were charged with knowledge thereof, and had constructive knowledge thereof.

"That an effort on the part of the defendant to insure the furnishing of water to the plaintiff, especially, as in the instant case, when the defendant furnished the land and seed and was making every effort to furnish the water, would be clearly an ultra vires act."

It is admitted by the answer of the defendant, and shown by the undisputed evidence, that no water, together with the natural rainfall sufficient to mature plaintiffs' crop of rice, was furnished by defendant, as provided by said contract, and that by reason thereof plaintiffs' crop was an entire failure, and that no rice crop was made by them; that it was apparent to all parties that because of a want of a sufficient flow of water in the Colorado river, it was impossible for defendant to furnish such necessary water; that one of the provisions of said contract is that it is understood, however, that should the party of the first part (defendant) fail to furnish enough water, which, together with the natural rainfall, will be sufficient to make a crop of rice on the leased land, or should the natural rainfall, in case first party fails to furnish enough water, or any water, sufficient to make a crop of rice on said premises, then the first party shall forfeit as damages to the second party, a sum not exceeding $4 per acre for the land not irrigated or supplied with water, either by said first party or the natural rainfall. It is also shown by the undisputed evidence that plaintiffs had 409 acres planted in rice on said leased premises; that there was an unprecedented drought in 1910, and that by reason thereof there was a shortage of water in said river.

Under the foregoing pleadings and undisputed evidence the trial court instructed the jury, which had been selected by the parties to the suit, to return a verdict for plaintiffs for the sum of $1,636 and upon the return of such verdict judgment was accordingly rendered. From this judgment the Northern Irrigation Company has appealed.

By appellants' first and third assignments it is insisted: First, that the trial court erred in refusing to permit defendant to prove by witnesses A. M. Anderson, manager, B. J. Jones, engineer, and August Kelke, canal superintendent of the defendant company, that the Northern Irrigation Company had been in operation for about 10 years, and that at all times prior to the season of 1910 they had procured water from the Colorado river through the intake provided for the supplying of water for the year 1910, and that at no time prior to such season had there been a failure of the water supply in the Colorado river, or a failure of the crops on the canal; that the contract entered into by the plaintiff and the defendant was entered into on the faith of being supplied from the usual and customary source—that is, from the Colorado river and through the intake, to be raised by its pumping plant into its canal—that as a matter of fact, it did supply all the water that was needed up to and including the 10th to the 15th of June, 1910; that at such time there was a complete failure of the water supply in the Colorado river, and no water could be procured from said river for the irrigation of plaintiffs' rice, or for the irrigation of the rice crop of the other farmers on the canal of the defendant company; that no rice was grown or harvested on the canal of the defendant company for that season, and that the sole reason for the failure to do so was the failure of the water supply in the Colorado river; that the manager of the defendant company kept his crew on said canal, kept fuel on hand, and kept the machinery in perfect condition, and ready to pump and supply water at any moment that water could be obtained from the Colorado river, and if there had been a rise in the river or an increase of the water from any source, it would have been able to have supplied it to the plaintiffs. The court refused to permit or consider such testimony on the ground that the failure of the water supply

in the Colorado river did not exempt the defendant from liability for failure to supply water to the plaintiff, because there was no provision in the contract sued upon limiting the liability for such cause, to which action of the court the defendant excepted. Second, that the trial court erred in refusing to permit the defendant to prove by V. L. Le Tulle, A. J. Harty, C. F. Baker, and E. L. Savage, old residents of Matagorda county, Tex., and thoroughly familiar with conditions of the Colorado river at all times during the past 10 years (and the said Savage having been in charge of the pumping plant of the Gravity Irrigation & Power Company, directly across the river from the Northern Irrigation Company), as to the failure of the water supply in the Colorado river; the court declined to permit such testimony to be offered, or to consider the same, on the ground that the failure of the water supply in the Colorado river did not exempt the defendant from liability for failure to supply water to the plaintiffs, because there was no clause in the contract limiting liability for failure to supply water, to which action of the court the defendant excepted.

[1-5] It must be conceded that by the contract between the parties appellant agreed, without reserve or exception, to furnish appellee sufficient water, together with the natural rainfall, to mature a rice crop on said leased premises, and that it was in contemplation at the time said contract was executed by the parties thereto that conditions or events might arise which might render it impossible for appellant to furnish the water contracted for, because they inserted in said contract the following clause:

"It is understood, however, that should the party of the first part fail to furnish enough water, which, together, with the natural rainfall will be sufficient to make a crop of rice on the above-described premises, * * * then the first party shall forfeit as damages to second party a sum not exceeding $4 per acre for the land not irrigated, or supplied with water"

—thus limiting appellant's liability in case such anticipated events should happen. It must also be conceded that the leased premises was the property of appellant; that it was under no obligation to lease the same to appellees, and to assume the obligation to furnish water to irrigate said premises, by said contract, but that such obligation or undertaking was a voluntary obligation which appellant bound itself to perform by the unequivocal terms of its voluntary contract. Such being the case, the sound maxim that as a man binds himself so shall he be bound is applicable, and this court is charged with the duty to so hold. The appellees may or may not have been willing to contract to cultivate appellant's land without payment of damages, if appellant's failure to furnish water should be by reason of an unprecedented drought, but we do know that in this case they did not do so, and we are not at liberty to make a contract for them which they did not make for themselves. Where the law creates a duty or imposes a charge, and the party is disabled to perform it without his fault, and has no remedy, then the law will excuse him, and in such case he will not be held liable in damages for nonperformance. Nor can he be held liable for a breach of his voluntary contract when the law intervenes to prevent its performance, but we have no such case before us.

"If the parties to a voluntary contract make no provision for a dispensation, the law gives none. It does not allow a contract, fairly and voluntarily made, to be annulled, and it does not permit to be interpolated what the parties themselves have not stipulated. The promisor may not be compelled to perform the undertaking, but he cannot, on account of hardship or the impossibility of performance of the undertaking, relieve himself from the liability incurred by the contract. Accordingly one who voluntarily enters into an absolute contract, without qualification or exception"

—to furnish water to another, sufficient to mature his rice crop, must abide by his contract and perform his undertaking, and cannot be heard to say that he was prevented from such performance by reason of an unprecedented drought. Ruling Case Law, vol. 6, §§ 364, 365, 367, 368, pp. 977–1006; Northern Irrigation Co. v. Dodd, 162 S. W. 946; Moore-Cortes Canal Co. v. Gyle, 36 Tex. Civ. App. 442, 82 S. W. 350.

[6] The case of Northern Irrigation Co. v. Dodd, supra, was one in which the suit was based upon a contract executed by appellant in this case, and is almost identical in its terms with the contract involved in this case, and the same questions were presented in that case as in this, and decided adversely to the contention of appellant. The fact that appellant was unable to furnish water which he had contracted to furnish by reason of an unprecedented drought is no defense to appellees' suit, and it follows that proof of such fact was not admissible, and therefore the trial court did not err in excluding the same.

[7] Assignments 2, 4, and 5 complain of the refusal of the trial court to submit to the jury appellant's defense of unprecedented drought. From what has already been said it is clear that we think that the fact that an unprecedented drought prevailed in 1910, which made it impossible for appellant to perform its part of said contract, was no valid defense to appellees' cause of action, and it follows that we think such defense should not have been submitted to the jury. Said assignments are overruled.

The fifth assignment insists that the court erred in refusing to instruct a verdict for appellant. There is no merit in said assignment, and we therefore overrule the same.

The seventh and eighth assignments insist that the trial court erred in instructing the jury to return a verdict for appellees for $1,636 (same being $4 per acre for 409 acres, shown by the undisputed evidence to be the number of acres planted in rice by appellees

on said rented premises), and in not instructing a verdict for appellant. We overrule these assignments. We think the evidence was such that made it the duty of the court to instruct the jury as it did, as no other verdict could have been sustained under the undisputed evidence.

[8] Appellant also insists that a verdict should have been instructed for it because the evidence fails to show that appellees had properly prepared its land for planting; that they took proper care to prevent the waste of water; that they maintained the necessary ditches; and that they failed to show by the evidence that they made a demand for water in writing, as they were obligated to do under the terms of their contract. We think the undisputed evidence shows that appellees properly prepared 409 acres of the leased land for planting; that they planted their rice on said 409 acres; that there was a good stand of rice; that had sufficient water been furnished to irrigate it, it would have produced about 11 to 12 sacks per acre; that they made no rice whatever because of their inability to get water; and that the average market value of rice in September, 1910, was $2.50 per sack, and in October of that year it was about $2.50 per sack. There was no contention in the trial court that appellees failed to perform their part of said contract, except in that they did not demand water in writing. Appellant pleaded, and the undisputed evidence shows, that appellant could not furnish the water contracted for, and from all the facts pleaded and proven it is apparent that all the parties knew that no water could be furnished appellees by appellant, sufficient to mature their rice crop, upon demand therefor, either in writing or otherwise; and therefore to make such demand under such circumstances would have been an idle thing, and the legal maxim "that the law does not require any one to do a thing vain and fruitless" applies. Northern Irrigation Co. v. Dodd, 162 S. W. 946.

[9] We overrule appellant's contention that the making of the contract in this case was an ultra vires act on the part of appellant, without comment.

We think the undisputed evidence shows that appellees' loss by reason of the failure of appellant to furnish the necessary water to mature their rice crop was largely in excess of the judgment rendered in their favor, and therefore overrule appellant's contention that the verdict was unauthorized under the contract.

While we have not separately discussed all of appellant's assignments, what has been said disposes of all of them.

We find no error in the trial of this case in the lower court, nor in the judgment there rendered; therefore said judgment is affirmed.

Affirmed.