WILLIAM E. MORELAND *vs.* THE CREDIT GUIDE PUBLISHING COMPANY, INCORPORATED.

Suffolk. January 15, 18, 1926. — May 24, 1926.

Present: PIERCE, CARROLL, WAIT, & SANDERSON, JJ.

*Contract*, Performance and breach.

A corporation with offices in many cities in the United States and its chief office in the city of New York was engaged in the publication of a credit guide and in furnishing to inquirers and subscribers information in regard to business credits, and for that purpose during seven years had accumulated in New York City more than three million cards upon which was entered matter in regard to the credit of persons and concerns which it used in supplying information to inquirers in any of its offices. In 1921 it made with an employee a contract in writing to employ him at a salary of $5,000 per year, with some further commissions, as "Manager as representative of the sales force for and in behalf of the Corporation in and for the State of Massachusetts with a central office to be located at Boston, Massachusetts, for a term of three (3) years," and he was to "devote his undivided time and attention to the

interest of the Corporation in the procurement of member or subscribers, and in the management of salesmen or agents." He built up a card collection of some four or five hundred reports at Boston, but he used the information stored in New York for the larger part of his work. In 1922 the records at New York were destroyed by fire, and the ability of the corporation to supply information was thereby greatly curtailed and it was not possible to resume business at once. I considered resumption of business, but in about a month decided to go on only with the publication and sale of its credit guide, in connection with which it offered the employee employment as salesman and pointed out to him that he could "earn considerable money by doing that." In an action by the employee against the corporation for breach of the contract, it was *held,* that

(1) The evidence did not warrant a finding that the performance of the contract by the defendant had been rendered impossible, but merely showed a serious impairment temporarily of the profitable conduct of the defendant's business;

(2) Rulings, based upon an assumption that a finding of impossibility of performance of the contract by the defendant might be made, properly were refused, and an instruction that the destruction of the records and the attendant crippling of the business "did not render impossible the performance of the contract in such a way as to relieve the defendant of liability for damages for the breach of the contract in suit here," was proper.

CONTRACT for breach of a contract in writing, relating to employment of the plaintiff by the defendant, described in the opinion. Writ dated July 20, 1922.

In the Superior Court, the action was tried before *Raymond,* J. The evidence of an offer by the defendant to retain the plaintiff in its employ, referred to in the opinion, was in the testimony of the president of the defendant and was "that he suggested to the plaintiff that it would be willing to retain the plaintiff in its employ for the purpose of selling a certain book or publication which the defendant corporation published in addition to its credit reporting business, and pointed out to the plaintiff that he could earn considerable money by doing that; that the plaintiff neither refused nor accepted the defendant's proposition, but thereafter brought suit for breach of contract and notified the defendant that he would not consider the proposition at all."

Other material evidence, requests by the defendant for rulings, and instructions given to the jury are described in the opinion. There was a verdict for the plaintiff in the sum of $4,574. The defendant alleged exceptions.

*H. A. Eyges,* (*C. J. Miller* with him,) for the defendant.

*R. B. Owen,* for the plaintiff, was not called on.

WAIT, J.   Succinctly stated, the question in this case is, whether the fortuitous and blameless destruction of records of credits, upon the existence of which the orderly conduct of a business depended, is an excuse for failure to continue the employment of an agent whose usefulness and value to the employer were contingent in large part upon daily use of such records.

The defendant is a corporation engaged in the publication of a credit guide, and in furnishing to inquirers and sub-scribers information in regard to business credits.   It main-tained offices in many places throughout the United States of America with a chief office in New York.   At the New York office it had accumulated since it began business in 1915 more than three million cards upon which was entered matter in regard to the credit of persons and concerns which it used in supplying information to inquirers who applied to it at New York or at its other offices.   In October, 1921, it made a contract of employment with the plaintiff by which it employed him as "Manager as representative of the sales force for and in behalf of the Corporation in and for the State of Massachusetts with a central office to be located at Boston, Massachusetts, for a term of three (3) years," and he was to "devote his undivided time and attention to the interest of the Corporation in the procurement of member or subscribers, and in the management of salesmen or agents." His compensation was to be $5,000 per year with a commission in addition upon terms not important to this decision.

The contract did not define his activities further.   In fact he collected information and sold, by himself or agents employed by him, the information in which the corporation dealt.   He built up a card collection of some four or five hundred reports at Boston, but he used the information stored in New York for the larger part of his work.   The corporation contemplated the collection of files at Boston, but it had done little toward that end.

On May 30, 1922, the records at New York were destroyed by fire, and the ability of the corporation to supply informa-

tion was thereby greatly curtailed. The plaintiff and other agents were summoned to New York and shown conditions there. The plaintiff testified it was not possible to resume business at once. The corporation considered resumption, but, in July, decided to go on only with the publication and sale of its credit guide. It offered to retain the plaintiff in connection with this, but he declined. On July 30, 1922, he brought this action for breach of the written agreement of employment.

The defendant asks that we sustain its exceptions to an instruction that the destruction of the records and its attendant crippling of the business " did not render impossible the performance of the contract in such a way as to relieve the defendant of liability for damages for the breach of the contract in suit here," and to the refusal to give the following requests: "If the jury finds that there was a written contract of employment between the defendant and the plaintiff and that the defendant's business was of such a nature that it depended for its continued operation and functioning upon the continued existence of its property, to wit: the written records, reports, data, investigations, etc., and that on or about June 1, 1922, the said property of the defendant, to wit: its written records, reports, data, investigations, and information were either wholly or substantially destroyed without fault or negligence on the part of the defendant, and that the business ceased and could not continue in operation by reason of the destruction of said property, then the contract between the plaintiff and the defendant terminated and came to an end, because of an implied condition in the said contract between the parties, that the business with the state of things present and existing at the time the contract was entered into, should substantially continue until the time of the expiration of the contract, according to the terms thereof," and "If the jury finds that it was impossible for the defendant to further function or carry on its business, then the contract of employment became impossible of performance by the defendant, and the defendant is therefore excused from liability thereon."

Without attempting to discuss generally the law in regard

to the effect of impossibility of performance of a contract as a defence, or what constitutes impossibility of performance, it is sufficient to decide that upon the facts here disclosed nothing more is shown than a serious impairment temporarily of the profitable conduct of the defendant's business. The material destroyed had been accumulated, apparently, in the course of a few years and could be replaced by following the method in which it had been originally obtained. Its use by the plaintiff, though of great importance, did not constitute his entire work for the defendant. The substantial contract did not need for its foundation the assumption of the existence of this particular collection of records. *Krell* v. *Henry,* [1903] 2 K. B. 740, 749.

No case has been called to our attention which goes so far as to sustain the defendant's contention. It does not fall within the class of cases which *Butterfield* v. *Byron,* 153 Mass. 517, dealt with as establishing termination to a contract by impossibility of performance. The instruction given was correct, and the requests were denied properly. *John Soley & Sons, Inc.* v. *Jones,* 208 Mass. 561. *Rowe* v. *Peabody,* 207 Mass. 226. *Madden* v. *Jacobs & Co.* 52 La. Ann. 2107. *Nicol* v. *Fitch,* 115 Mich. 15. *Turner* v. *Goldsmith,* [1891] 1 K. B. 544. *Herne Bay Steam Boat Co.* v. *Hutton,* [1903] 2 K. B. 683. *Krell* v. *Henry, supra. Taylor* v. *Caldwell,* 3 B. & S. 826.

*Exceptions overruled.*